**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: T-MOBILE CUSTOMER DATA | ) | MDL No. 3019 |
| SECURITY BREACH LITIGATION | ) | |
| | ) | Master Case No. 4:21-md-03019-BCW |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' SUGGESTIONS IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL AND TO
<u>DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND .................................................................................................... 2

III.    THE PROPOSED SETTLEMENT AGREEMENT AND BENEFITS
        PLAN ..................................................................................................................... 5

        A.      The Settlement Class................................................................................. 5

        B.      Benefits of the Settlement ........................................................................ 6

                1.      Cash Payments ............................................................................... 6

                2.      Identity Defense Services and Restoration Services................................ 7

                3.      Information Security Spending ...................................................... 8

        C.      Provision of Notice to the Settlement Class ............................................ 8

        D.      Opt-Out and Objection Procedures.......................................................... 9

        E.      Release Provisions ................................................................................. 11

IV.     LEGAL STANDARDS ....................................................................................... 12

V.      THE SETTLEMENT APPROVAL PROCESS.................................................... 13

VI.     THE SETTLEMENT SATISFIES THE RULE 23(E) FACTORS ...................... 14

        A.      Plaintiffs and Their Counsel Have Adequately Represented the
                Settlement Class...................................................................................... 15

        B.      The Settlement Agreement Was Negotiated at Arm's Length ................ 16

        C.      The Relief Provided for the Settlement Class is Fair, Reasonable,
                and Adequate .......................................................................................... 17

                1.      The Value of Settlement Benefits ............................................... 17

                2.      The Costs, Risks, and Delay of Trial and Appeal.................................. 18

                3.      The Effectiveness of Administration ........................................... 19

                4.      The Experience and Views of Counsel ....................................... 21

                5.      The Proposed Fees, Expenses, and Service Awards.................... 22

        D.      The Proposal Treats Settlement Class Members Equitably .................... 23

VII.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
        APPROPRIATE................................................................................................... 24

i

A.    The Rule 23(a) Requirements Are Satisfied ..................................... 25

    1.    Numerosity ........................................................................... 25

    2.    Commonality ......................................................................... 25

    3.    Typicality ............................................................................. 26

    4.    Adequacy of Representation ................................................. 27

B.    The Rule 23(b)(3) Requirements Are Satisfied ............................... 28

    1.    Predominance ....................................................................... 29

    2.    Superiority ............................................................................ 30

VIII.  APPOINTMENT OF CLASS COUNSEL AND CLASS
REPRESENTATIVES ............................................................................. 31

IX.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ................. 32

X.     RELATED ACTIONS AND PROCEEDINGS SHOULD BE STAYED
OR ENJOINED UNLESS CLASS MEMBERS OPT OUT OF THE
SETTLEMENT CLASS ........................................................................... 33

XI.    PROPOSED SCHEDULE FOR INTERMEDIATE DEADLINES AND
FINAL APPROVAL HEARING ............................................................... 35

XII.   CONCLUSION ....................................................................................... 36

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) .................................................................................................. 27

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................................. 24, 27, 29

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013).............................................................................................................. 29

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ............................................................................................... 21

*Ashley v. Reg'l Transp. Dist.*,
   No. 05-cv-01567, 2008 WL 384579 (D. Colo. Feb. 11, 2008)............................................. 16

*Bellows v. NCO Fin. Sys., Inc.*,
   No. 07-CV-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ......................................... 13

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ............................................................................................... 30

*Carnegie v. Household Int'l., Inc.*,
   376 F.3d 656 (7th Cir. 2004) ............................................................................................... 31

*Carpe v. Aquila, Inc.*,
   224 F.R.D. 454 (W.D. Mo. 2004)................................................................................... 25, 27

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981)................................................................................................................ 19

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005).................................................................................. 12

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)................................................................................................................ 25

*Cromeans v. Morgan Keegan & Co.*,
   303 F.R.D. 543 (W.D. Mo. 2014)......................................................................................... 25

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ............................................................................................... 27

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).............................................................................................................. 32

*Gordon v. Chipotle Mexican Grill, Inc.*,
No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .................... 18, 19

*Huyer v. Buckley*,
849 F.3d 395 (8th Cir. 2017) ................................................................................. 22

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ...................................................................... passim

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
770 F.2d 328 (2d Cir. 1985) .................................................................................. 34

*In re BankAmerica Corp. Sec. Litig.*,
210 F.R.D. 694 (E.D. Mo. 2002) ............................................................................ 21

*In re Brinker Data Incident Litig.*,
No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ........................ 18

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
No. CV 17-2832, 2020 WL 869980 (D. Minn. Feb. 21, 2020) ......................................... 34, 35

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .............................. 17

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ............................................................................... 24

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) .................................................................................... 12

*In re Glenn W. Turner Enters. Litig.*,
521 F.2d 775 (3d Cir. 1975) ................................................................................... 35

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013) ................................................................................. 18

*In re Life Time Fitness, Inc. Telephone Consumer Prot. Act (TCPA) Litig.*,
847 F.3d 619 (8th Cir. 2017) ................................................................................. 22

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
No. 19-MD-2879, 2022 WL 1396522 (D. Md. May 3, 2022) ......................................... 18

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
No. 3:15-md-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019) .................................... 31

*In re School Asbestos Litig.*, No.,
83-0268, 1991 WL 61156 (E.D. Pa. Apr. 16, 1991) .................................................... 34

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .................................. 18, 19

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018) ..................................................................... 22

*In re TJX Cos. Retail Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. 2007)............................................................................. 18

*In re Target Corp. Customer Data Security Breach Litig.*,
2017 WL 2178306 (D. Minn. May 17, 2017)........................................................... 24

*In re U.S. Bancorp. Litig.*,
291 F.3d 1035 (8th Cir. 1002) ................................................................................ 22

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
716 F.3d 1057 (8th Cir. 2013) ......................................................................... 12, 21

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) .................................................................................. 24

*Liles v. Del Campo*,
350 F.3d 742 (8th Cir. 2003) ........................................................................... 13, 34

*Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*,
451 F.3d 528 (8th Cir. 2006) .................................................................................. 21

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*,
921 F.2d 1371 (8th Cir. 1990) ......................................................................... 12, 22

*Marcus v. Kansas Dept. of Revenue*,
209 F. Supp. 2d 1179 (D. Kan. 2002)..................................................................... 16

*Marshall v. Nat'l Football League*,
787 F.3d 502 (8th Cir. 2015) ......................................................................... 12, 24

*McGlenn v. Driveline Retail Merch., Inc.*,
No. 18-cv-2097, 2021 WL 165121 (C.D. Ill. Jan. 19, 2021)................................... 18

*Paxton v. Union Nat'l Bank*,
688 F.2d 552 (8th Cir. 1982) .................................................................................. 25

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ................................................................................ 12

*Pollard v. Remington Arms Co., LLC*,
896 F.3d 900 (8th Cir. 2018) .................................................................................. 24

v

*Prater v. Medicredit, Inc.*,
No. 4:14-CV-00159, 2015 WL 4385682 (E.D. Mo. July 13, 2015) ........................................ 34

*Rawa v. Monsanto Co.*,
934 F.3d 862 (8th Cir. 2019) ...................................................................................... 24

*Sanderson v. Unilever Supply Chain, Inc.*,
10-cv-00775-FJG, 2011 WL 5822413 (W.D. Mo. Nov. 16, 2011) ........................................ 21

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
4:05-CV-01108, 2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ................................................ 13

*Smith v. Triad of Alabama, LLC*,
No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) .............................. 18

*Standard Microsystems Corp. v. Texas Instruments Inc.*,
916 F.2d 58 (2d Cir. 1990) ........................................................................................ 34

*Stephens v. U.S. Airways Group, Inc.*,
102 F. Supp. 3d 222 (D.D.C. 2015) .............................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................... 26, 29, 30

*White v. Nat'l Football League*,
41 F.3d 402 (8th Cir.1994) ........................................................................................ 34

Statutes

28 U.S.C. § 1651 ................................................................................................................ 34

Cal. Civ. Code § 1798.150 ............................................................................................... 23

Rules

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

Other Authorities

2 Joseph M. McLaughlin, McLaughlin on Class Actions § 6:24 (8th ed. 2011) ......................... 22

7AA Fed. Prac. & Proc. Civ. § 1779 (3d ed. 2005) .............................................................. 30

Newberg on Class Actions §§ 3.05, 3:60 (6th ed.) ....................................................... 24, 25

Newberg on Class Actions §§ 11.25, 11.41 (4th ed.) ...................................................... 12, 13

## I. INTRODUCTION

The Settlement Class Representatives and T-Mobile have reached a settlement that will create a non-reversionary settlement fund of $350 million to provide substantial relief to Settlement Class Members, including: (i) monetary reimbursement of up to $25,000 for Out-of-Pocket Losses resulting from the Data Breach, including up to five hours of time spent responding to the Data Breach or up to fifteen hours of time spent addressing related Out-of-Pocket Losses, compensated at the higher of $25 per hour or a claimant's documented hourly wage, if the claimant missed work; (ii) an alternative cash payment (in lieu of Out-of-Pocket Losses and Lost Time) of $25, or $100 for Class Members who resided in California at the time of the Data Breach (to account for the California Consumer Privacy Act of 2018); (iii) a two-year subscription to comprehensive Identity Defense Services providing monitoring and identity theft protection through Pango's Identity Defense Complete Plan; (iv) Restoration Services for all Settlement Class Members, regardless of whether they make any other claim for relief; as well as the costs of notice and administration, Attorneys' Fees and Expenses, and Service Awards for the Settlement Class Representatives. In addition to this historic direct relief to the Settlement Class, T-Mobile has also agreed to maintain an incremental spend commitment of at least $150 million for data security and related technology for 2022 and 2023 to improve its network and data security and address vulnerabilities that resulted in the Data Breach. In short, the Settlement Agreement addresses the central allegations of this litigation and achieves the primary relief sought by Plaintiffs.[1]

Considering the substantial and meaningful cash and non-monetary benefits conferred upon Settlement Class Members, valued at well over $500 million, and the significant risks faced through continued litigation, the terms of the Settlement are "fair, reasonable, and adequate" in

---

[1] While T-Mobile denies Plaintiffs' allegations, it has agreed to the Settlement Agreement and does not oppose this Motion.

1

accordance with Federal Rule of Civil Procedure 23(e)(2). Therefore, the Court should preliminarily approve the proposed Settlement, appoint Class Counsel and the Settlement Class Representatives, authorize the provision of notice to the Settlement Classes, and set a hearing to consider final approval of the Settlement. In support of this Motion, Plaintiffs submit the Settlement Agreement (Ex. 1); the proposed Consumer Benefits Plan (Ex. 2); the declaration of Class Counsel (Ex. 3); the declaration of Jeanne C. Finegan on behalf of the proposed Settlement Administrator (Kroll Settlement Administration LLC or "Kroll"), including the Notice Plan (Ex. 4); the proposed Settlement notices (Ex. 5); the proposed Claim Form (Ex. 6); and the declaration of Gerald Thompson on behalf of Pango, the provider of the Identity Defense Services and Restoration Services (Ex. 7).

## II.     BACKGROUND

With over 100 million customers, T-Mobile is one of the largest consumer brands in the United States. As part of its business operations, T-Mobile collects and maintains the confidential personal information of millions of U.S. consumers, including names, Social Security numbers, driver's license numbers, phone numbers, unique technical identifiers tethered to customers' mobile phones, and other identifying information unique to each individual customer.

In their Consolidated Consumer Class Action Complaint ("Complaint"), Plaintiffs allege that sometime in 2021, one or more cybercriminals exploited T-Mobile's data security protocols and gained access to internal servers containing the personally identifiable information ("PII") of millions of current, former, and prospective T-Mobile customers (the "Data Breach"). Doc. 128, Compl. ¶¶ 84-90. After exfiltrating a purported 106 GB of this data, the hacker or hackers offered to sell a subset of the stolen PII via a dark-web forum. *Id.* ¶¶ 92-95. On August 16, 2021, T-Mobile announced the cyberattack, stating (at the time) that account data for more than 50 million current, former, or prospective customers was compromised in the Data Breach. *Id.* ¶¶ 6, 98. T-Mobile also

disclosed that an unidentified number of phone numbers, IMEI, and IMSI numbers were compromised. *Id.* ¶ 103. In November 2021, T-Mobile revealed in an SEC filing that its "investigation also identified approximately 26.0 million additional individuals" whose "names, dates of birth and, in many cases, addresses" were compromised, increasing the total number of individuals whose PII was compromised in the Data Breach to approximately 76.6 million. *Id.* ¶ 104.

During the weeks and months following the Data Breach, Plaintiffs allege that they and other class members suffered actual and attempted identity theft and fraud, including unauthorized credit applications filed in their names, unauthorized accounts opened in their names, unauthorized charges and bank transfers, unauthorized access to financial and other accounts, unauthorized attempts to change the passwords of such accounts, and increased phishing attempts in the form of emails, texts, and phone calls, as well as ongoing and imminent increased risk of harm. *See id.* ¶¶ 8-71; 135-48. Similarly, numerous Plaintiffs and other class members have been notified by third-party monitoring companies that their PII was located on the dark web as a result of the Data Breach. *Id.* ¶¶ 8-71. Plaintiffs further allege that they and other class members were compelled to spend time and effort as a result of the Data Breach, including researching the Data Breach, monitoring their accounts and credit reports for unauthorized activity, attempting to remedy unauthorized activity and identity theft that has already occurred, freezing and unfreezing their credit, contacting their financial institutions, and taking other protective or remedial measures. *Id.*

After T-Mobile provided notice of the Data Breach, customers filed dozens of lawsuits against T-Mobile. On August 23, 2021, a Plaintiff in one of those cases filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML"), supporting centralization of those actions in the Western District of Washington. *In re T-Mobile Customer Data Sec. Breach Litig.* (MDL No.

3019), JPML Doc. 1. On September 14, 2021, T-Mobile filed its response to that motion, supporting centralization in the Western District of Missouri. JPML Doc. 49. On December 3, 2021, the JPML ordered the centralization of those actions in the United States District Court for the Western District of Missouri for coordinated or consolidated pretrial proceedings before the Honorable Brian C. Wimes. JPML Doc. 98.

On February 25, 2022, following an application process authorized under Federal Rule of Civil Procedure 23(g), the Court appointed Norman E. Siegel of Stueve Siegel Hanson LLP, Cari Campen Laufenberg of Keller Rohrback L.L.P., and James J. Pizzirusso of Hausfeld LLP as Co-Lead Interim Class Counsel, together with Liaison Counsel and an Executive Committee of eight members,[2] authorizing them to litigate all pretrial proceedings and to conduct settlement negotiations on behalf of Plaintiffs and putative class members. Doc. 102.

On May 11, 2022, Plaintiffs filed their Complaint on behalf of 64 Plaintiffs from across the United States. Doc. 128. Plaintiffs' Complaint asserted the following claims against T-Mobile on behalf of Plaintiffs and the Nationwide Class, or alternatively on behalf of Plaintiffs and the Statewide Subclasses: (1) negligence; (2) negligence *per se*; (3) breach of confidence; (4) invasion of privacy—intrusion upon seclusion; (5) breach of express contract; (6) breach of implied contract; (7) unjust enrichment; and (8) declaratory judgment; as well as numerous additional claims on behalf of the respective Statewide Subclasses. *Id.* ¶¶ 163-1221. On July 1, 2022, T-Mobile filed a consent motion requesting an extension of time to answer Plaintiffs' Complaint,

---

[2] The Court appointed Alexis Wood of the Law Offices of Ronald Marron as Liaison Counsel. Doc. 102 at 3. The Court appointed Maureen M. Brady of McShane & Brady LLC, Amy E. Keller of DiCello Levitt Gutzler LLC, Robert Lopez of Hagens Berman Sobol Shapiro LLP, Margaret C. MacLean of Lowey Dannenberg, P.C., Kaleigh N.B. Powell of Tousley Brain Stephens PLLC, Kenya J. Reddy of Morgan & Morgan, Sabita J. Soneji of Tycko and Zavareei LLP, and Rachel K. Tack of Zimmerman Reed, LLP as members of the Executive Committee. *Id.* at 5. Ms. Reddy later resigned from her appointment.

until and including August 10, 2022, which the Court granted. Docs. 148, 152.

At various times before and after filing the Complaint, the Parties, through counsel, engaged in discussions regarding potential early mediation of this case. As part of this process, the Parties exchanged extensive confidential discovery documents and information related to the Data Breach and the named Plaintiffs in the Complaint, which allowed the Parties to assess the risks of the case and meaningfully engage in arm's-length settlement negotiations. Ex. 3, Class Counsel Declaration ("Class Counsel Decl.") at ¶ 23. Following several conferences (including an in-person meeting in Kansas City) the Parties decided to mediate the case with the Honorable Diane M. Welsh (Ret.) of JAMS, a mediator with a proven track record of resolving complex data breach class actions, in Philadelphia, Pennsylvania. Judge Welsh conducted pre-mediation calls with each Party, and the Parties exchanged detailed mediation statements in advance of mediation. *Id.* ¶ 24. After vigorous and hard-fought negotiations occurring over two full days on June 7 and 8, 2022, the Parties reached an agreement in principle and executed a binding term sheet, which reflects the essential terms of the Settlement now offered for the Court's consideration in the final Settlement Agreement. *Id.*

## III. THE PROPOSED SETTLEMENT AGREEMENT AND BENEFITS PLAN

### A. The Settlement Class

Under the Settlement, the Parties agree to certification of the following Settlement Class, which includes the California Settlement Subclass:

> The approximately 76.6 million U.S. residents identified by T-Mobile whose information was compromised in the Data Breach, as reflected in the Class List. For the avoidance of doubt, the Settlement Class includes the California Settlement Subclass. Excluded from the Settlement Class are (i) T-Mobile, any entity in which T-Mobile has a controlling interest, and T-Mobile's officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; (iii) any individual who timely and validly opts out of the Settlement; and (iv) all individuals who on or before the date the Court enters

the Preliminary Approval Order have either (1) filed or served a written arbitration demand or petition against T-Mobile relating to the Data Breach, or (2) provided written notice to T-Mobile of their intent to pursue arbitration against T-Mobile relating the Data Breach with a description of claims to the address provided in T-Mobile's Terms and Conditions or to T-Mobile's Counsel.

Ex. 1 ¶ 2.36. The California Subclass includes members of the Settlement Class that were residents of the State of California on August 1, 2021. *Id.* ¶ 2.6. The Settlement expressly excludes from the Settlement Class any T-Mobile customer who has filed or served a written arbitration demand or petition against T-Mobile relating to the Data Breach, or provided written notice to T-Mobile of their intent to pursue arbitration against T-Mobile relating the Data Breach with a description of claims to T-Mobile's counsel or to the address provided in T-Mobile's Terms and Conditions, meaning those individuals who have chosen to pursue arbitration will be able to continue those proceedings without interference from this Settlement. *Id.* ¶ 2.36.

## B.     Benefits of the Settlement

In exchange for the release of Settlement Class Members' claims against T-Mobile, T-Mobile will fund a non-reversionary Settlement Fund in the amount of $350 million to fund the following benefits, as set out in the Settlement Agreement (Ex. 1) and Proposed Consumer Benefits Plan (Ex. 2).

### 1.     Cash Payments

**Out-of-Pocket Losses.** The Settlement Fund will be used to pay valid claims for Out-of-Pocket losses incurred on or after August 1, 2021, that are fairly traceable to the Data Breach. Out-of-Pocket losses include, but are not limited to: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other alleged misuse of a Settlement Class Member's personal information; (ii) costs incurred on or after August 1, 2021, associated with placing or removing a credit freeze on a Settlement Class Member's credit file with any credit reporting agency; (iii) other miscellaneous expenses incurred on or after August

1, 2021, related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (iv) costs of credit reports, credit monitoring, or other products related to detection or remediation of identity theft incurred on or after August 1, 2021, through the date of the Settlement Class Member's claim submission. Ex. 2 ¶ 3.

**Lost Time.** The Settlement Fund will also be used to pay claims for Lost Time. Lost Time that is not related to a qualifying claim for Out-of-Pocket Losses may be made in 15-minute increments and supported by a certification for up to 5 hours. In the alternative, Lost Time related to a qualifying claim for Out-of-Pocket Losses may be made in 15-minute increments and supported by a certification for up to 15 hours. Settlement Class Members can claim $25 per hour, or their current hourly rate if higher and supported by documentation. *Id.* ¶ 4.

**Alternative Cash Payments.** As an alternative to making a claim for Out-of-Pocket Losses or Lost Time, Settlement Class Members may request an Alternative Cash Payment of $25, or $100 for California Settlement Subclass Members. *Id.* ¶ 5.

### 2. Identity Defense Services and Restoration Services

Class members will have the opportunity to enroll in two years of Identity Defense Services provided by Pango. Ex. 7. The Identity Defense Services include the following features:

- Credit Monitoring from TransUnion

- Monthly Credit Score from TransUnion

- Real Time Inquiry / Authentication Alerts

- Dark Web Monitoring

- High Risk Transaction Monitoring

- USPS Address Change Monitoring & Alerts

- Lost Wallet Protection

7

- Security Freeze Capability

- Customer Support & Victim Assistance

- $1,000,000 in identity theft insurance

*Id.* ¶ 4. Moreover, all Settlement Class Members, regardless of whether they make a claim, will be entitled to Restoration Services, which provide access to a U.S. based call center to assist in responding to any identity theft or related fraud. Detailed components of the services offered through the Settlement are included in Exhibit 7.

### 3. Information Security Spending

In addition to the relief set forth above, as part of this Settlement T-Mobile has agreed to maintain an incremental spend commitment of at least $150 million for data security and related technology, in the aggregate for years 2022 and 2023 above its previously budgeted baseline. Ex. 1 ¶ 5.1. This commitment is in addition to the $350 million committed to the Settlement Fund.

## C. Provision of Notice to the Settlement Class

The Parties have consulted with Kroll, the proposed Settlement Administrator, to determine the best practicable method of class notice. *See* Ex. 4. Subject to the requirements of any orders entered by the Court, the Parties propose that notice be provided by the Settlement Administrator as follows:

Within thirty (30) days after the Court's entry of a Preliminary Approval Order, T-Mobile shall provide to the Settlement Administrator a Class List, which shall include Settlement Class Members' full names, current addresses, T-Mobile phone numbers, and email addresses (to the extent available) as reflected in T-Mobile's records. Ex. 1 ¶ 10.2. T-Mobile shall also provide the Settlement Administrator a list of those individuals who have filed or served a written arbitration demand or petition related to the Data Breach, or provided written notice to T-Mobile of their intent to pursue arbitration against T-Mobile related to the Data Breach. *Id*. Within seven (7) days

of receiving the Class Member Information, the Settlement Administrator shall crosscheck the information provided by T-Mobile against the National Change of Address directory to ensure the most recent and accurate addresses are used to disseminate the notice. Ex. 4 ¶ 17. Upon receipt of any notice of address change or forwarding address, the Settlement Administrator shall re-mail any notice to the updated address. *Id*. ¶¶ 18-19.

Within ninety (90) days after the Court enters the Preliminary Approval Order, the Settlement Administrator will fully commence the notice. Ex. 1 ¶ 2.23. Notice will be in the form of a double-sided postcard sent via U.S. mail; electronic mail; and/or SMS Text message (1) notifying Settlement Class members of the Settlement and relevant terms, (2) providing Settlement Class members the URL to the Settlement website and a telephone number they can call to obtain additional information about the Settlement, and (3) instructing Settlement Class members on how to make a Claim. Settlement Class Members will be given ninety (90) days after the Notice Date to enroll in the Identity Defense Services and make claims for other Settlement benefits. Ex. 4 ¶¶ 12-25. In addition to these forms of notice, the Settlement Administrator will provide additional media notice intended to supplement the direct notice program. *Id.* ¶¶ 21-23.

The Settlement Administrator will also create a Settlement website dedicated to providing information related to the Action and this Settlement. Ex. 4 ¶ 24. The Settlement website will include the long form notice as well as relevant Court documents relating to the Action. It will also enable Settlement Class Members to claim the Identity Defense Services, to make claims for other Settlement benefits, and to submit documents to supplement or cure deficient claims. The Settlement Administrator will also establish and maintain a toll-free telephone number with information relevant to the Settlement. *Id.* ¶ 25.

**D.    Opt-Out and Objection Procedures**

Any Settlement Class Member who wishes to exclude themselves from the Settlement must

submit a written request for exclusion to the Settlement Administrator via United States mail postmarked no later than the Opt-Out Deadline or submitted online through the claims portal no later than the Opt-Out Deadline. Ex. 1 ¶ 16.1. The written request for exclusion must: (i) identify the case name of the Action; (ii) identify the name and address of the individual seeking exclusion from the Settlement; (iii) be personally signed by the individual seeking exclusion; (iv) include a statement clearly indicating the individual's intent to be excluded from the Settlement; and (v) request exclusion only for that one individual whose personal signature appears on the request. *Id.* ¶ 16.2. Any individual who submits a valid and timely request for exclusion in the manner described herein shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to object to any aspect of the Settlement. *Id.* ¶ 16.5.

Other than those individuals excluded under the class definition, any individual on the Class List who does not submit a valid and timely request for exclusion in the manner described herein shall be deemed to be a Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Classes. *Id.* ¶ 16.6.

Any Settlement Class Member who wishes to object to the Settlement must submit a written objection to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order. *Id.* ¶ 17.1. The written objection must include: (i) the case name and number of the Action; (ii) the name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel; (iii) a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (iv) a statement of the

number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement within the three years preceding the date that the objector files the objection, along with the caption of each case in which the objector has made such objection; (v) a statement of the specific grounds for the objection; and (vi) a statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel. *Id.* ¶ 17.2.

In addition to the foregoing requirements, if an objecting Settlement Class Member intends to speak at the Final Approval Hearing (whether *pro se* or through an attorney), the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing. *Id.* ¶ 17.3. Any Settlement Class Member who fails to object to the Settlement in the manner described in this Agreement and in the notice provided pursuant to the Notice Plan shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Agreement by appeal or any other means. *Id.* ¶ 17.4.

## E. Release Provisions

As of the Effective Date, all Releasing Parties, on behalf of themselves, their heirs, assigns, beneficiaries, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, hereby expressly, generally, absolutely, unconditionally, and forever release and discharge any and all Released Claims against the Released Parties. *Id.* ¶¶ 14.1-

14.2. Importantly, Class Counsel negotiated an exclusion of "SIM-swap Claims"[3] from the Released Claims, meaning nothing in the release will impact the ability of Settlement Class Members to bring such claims in another forum. *Id.* ¶ 2.30.

## IV. LEGAL STANDARDS

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *See, e.g.*, *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11.41 (4th ed.); *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). In this regard, the judgment of class counsel in entering into a proposed class settlement is an important consideration. *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (D.D.C. 2015) (crediting the judgment of class counsel, who was experienced in litigating and settling complex cases including class actions, that the settlement was fair, reasonable, and adequate);

---

[3] "SIM-swap Claims" means any claim that T-Mobile is liable for damages for any SIM-swap wherein an unauthorized user gains control of a victim's mobile phone number and phone service. *Id.* ¶ 2.42.

*Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("[I]t is the considered judgment of experienced counsel that this settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

These Suggestions in Support follow the factors outlined in Rule 23(e) and address other factors previously analyzed by this and other courts. Under any standard, the settlement is fair, reasonable, and adequate, and should be granted preliminary approval.

## V.    THE SETTLEMENT APPROVAL PROCESS

Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); Newberg on Class Actions § 11.25, at 38-39 (4th ed.); *see also Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) ("As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.") (citing Manual § 21.632 and *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003)).

During the preliminary approval stage, counsel submit the proposed terms of the settlement, and the court makes a preliminary fairness evaluation, deciding whether it is likely to approve the settlement such that notice of the settlement should be sent to the class. Rule 23(e)(1)(B) states that, in order to direct that notice of the proposed settlement be given to the class, the Court must first find that it will likely be able to:

(i)      approve the proposal under Rule 23(e)(2); and

(ii)     certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

If the Court is likely to approve the settlement, then the Court should grant preliminary

approval of the proposed settlement and direct that the settlement proceed to the second stage, in which notice under Rule 23(e) is given to class members of the proposed settlement and a formal fairness hearing is held at which objections may be heard. *See* Manual § 21.633; Fed. R. Civ. P. 23(e)(1).

Here, at this first stage of the settlement process, Plaintiffs request that the Court grant preliminary approval of the Rule 23 settlement and direct that notice be sent to the class, consistent with the terms of the Settlement. T-Mobile does not oppose Plaintiffs' request.

## VI. THE SETTLEMENT SATISFIES THE RULE 23(E) FACTORS

In preliminarily evaluating the fairness of the settlement, courts consider the factors articulated in Rule 23(e)(2), which include whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.[4]

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure

---

[4] Rule 23(e) contemplates that the parties will identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Class Counsel confirms that no agreements exist other than those outlined herein and reflected in Settlement Agreement. Ex. 3 ¶ 26.

and substance that should guide the decision whether to approval the proposal." 2018 Advisory Committee Notes.

## A.     Plaintiffs and Their Counsel Have Adequately Represented the Settlement Class

Plaintiffs and their counsel have vigorously and adequately represented the class since the start of the litigation. Plaintiffs have actively participated in the litigation, providing allegations for the Complaint, gathering information for informal and formal discovery, and working with Class Counsel in the settlement process. Class Counsel have likewise diligently pursued the litigation by investigating the factual and legal claims against T-Mobile, drafting a comprehensive Complaint, identifying and retaining merits and damages experts to evaluate the litigation and further support Plaintiffs' claims, and working to gather the documents and information necessary to properly evaluate the case and negotiate a robust settlement that provides Settlement Class Members with significant relief.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider, among other things, counsel's (i) work in identifying or investigating potential claims; (ii) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (iii) knowledge of the applicable law; and (iv) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Proposed Class Counsel readily satisfy the criteria. They identified the potential claims, investigated them, and have pursued them at considerable time and expense. Class Counsel are highly experienced in handling class action litigation, particularly with respect to claims involving data breach and data privacy such as are at issue in this case. They have knowledge and expertise of the applicable law, which they have demonstrated in this case, and they have committed ample time and resources to representing the class. As a result of Class Counsel's efforts, the proposed

Settlement Agreement provides extraordinary monetary relief and other benefits to the Settlement Class. As such, Plaintiffs and their counsel have adequately represented the Settlement Class.

**B.     The Settlement Agreement Was Negotiated at Arm's Length**

The Settlement Agreement was fairly and honestly negotiated by arm's-length bargaining between experienced counsel. "The fairness of the negotiating process is to be examined in the light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (internal quotation omitted). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

Over the months before and after the filing of the Complaint, the Parties engaged in various discussions regarding the early mediation and potential settlement of this case, including by exchanging extensive confidential information related to the Data Breach and the named Plaintiffs, which allowed the Parties to meaningfully engage in informed settlement negotiations. Ex. 3 ¶ 23. After months of discussion and informal discovery between the Parties, on June 7 and 8, 2022, the Parties participated in a two-day, in-person mediation conducted by a highly-respected mediator, the Honorable Judge Diane M. Welsh (Ret.) of JAMS, in which they reached a settlement in principle at the end of the second day of negotiations. *Id.* ¶ 24.

Over the course of the following several weeks, the Parties engaged in ongoing negotiations regarding the various terms set forth in the Settlement Agreement. *Id.* ¶ 25. These were also lengthy, and at time difficult, negotiations. The time expended to work out significant details and vigorous disagreements between the Parties demonstrates that this proposed resolution was the product of heavily contested and arm's-length negotiations.

16

**C.** **The Relief Provided for the Settlement Class is Fair, Reasonable, and Adequate**

This Settlement Agreement provides significant relief to Class Members, compensates them fairly for their claims, and is well within the range of settlements of similar cases.

**1.** **The Value of Settlement Benefits**

The cash value of the Settlement Fund is $350 million, which represents the largest data breach settlement for a class of this size and is second only to the *Equifax* settlement (which involved twice as many victims) for any data breach settlement, regardless of class size. Moreover, in addition to the $350 million cash fund, T-Mobile has committed to an additional $150 million in security spending over its previous budgeted spending for 2022 and 2023. These figures, standing alone, support the value of this Settlement by any objective measure.

Further, the benefit conferred on the class far exceeds the $500 million cash components provided in the Settlement. Consideration of the value of the Identity Defense Services and Restoration Services offered to every class member push the value of the Settlement higher, likely into the billions of dollars. As explained in the Declaration of Gerald Thompson, the Identity Defense Services and Restoration Services provided in the Settlement are sold at retail for $96 per year. Ex. 7 ¶ 5. Accordingly, the value of this benefit[5] to the Settlement Class is approximately $1.47 billion for every 1% of Settlement Class Members that elect to receive this benefit. Ex. 3 ¶ 37. Given a Settlement Class of more than 76.6 million individuals, this is an enormous benefit to Settlement Class Members that materially increases the value of the Settlement.

Finally, much of the value conferred by the Settlement would be difficult to obtain at trial.

---

[5] The retail value of these services is the proper metric to apply because this represents the value of the benefit Settlement Class Members will actually receive. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *38 (N.D. Ga. Mar. 17, 2020).

For example, although cash is a common form of relief obtained through litigation, requiring a corporation to spend money on data security and making available expensive identity protection services are typically not forms of relief secured through trial. Given the multifaceted forms of relief available here without a trial, the Settlement provides extraordinary value to Settlement Class Members, a factor that weighs in support of the Settlement.

### 2. The Costs, Risks, and Delay of Trial and Appeal

Although all class actions involve a high level of risk, expense, and complexity, data breach litigation is especially risky and complex. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky."). One of these risks is that T-Mobile could successfully oppose class certification. Courts have reached different decisions as to whether to grant class certification in data breach cases. *Compare In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying certification), *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 401 (D. Mass. 2007) (same), and *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097, 2021 WL 165121, at *10 (C.D. Ill. Jan. 19, 2021) (same), *with Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017) (granting certification), *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2022 WL 1396522, at *33–35 (D. Md. May 3, 2022) (certifying certain statewide classes; Rule 23(f) appeal granted), and *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021) (certifying statewide class with respect to California Unfair Competition Law claims); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ("While there is no obvious reason to treat certification in a data-

breach case differently than certification in other types of cases, the dearth of precedent makes continued litigation more risky."). Further, case law specific to data breach litigation is evolving, with differing outcomes, and there is no guarantee of the ultimate result. *See In re Anthem*, 327 F.R.D. at 318 ("Due to the unsettled nature of the legal questions, Plaintiffs would likely have to contend with changing interpretations of procedural and substantive provisions throughout the course of the case."); *Gordon*, 2019 WL 6972701, at *1 ("Serious questions of law and fact regarding the merits of Plaintiffs' claims and Defendant's defenses place the ultimate outcome of the litigation in doubt."); *In re Sonic Corp.*, 2019 WL 3773737, at *7 ("This unsettled area of law often presents novel questions for courts."). Even the CCPA, a law designed to provide statutory remedies for data breaches, is new and unsettled.

This case is complex and carries significant risks for the Parties as to both legal and factual issues, and litigating the case to trial would consume great time and expense. Further, regardless of the outcome, a lengthy appeal would be likely. In contrast, the Settlement Agreement ensures that Class Members will recover significant, immediate relief, including relief that this litigation primarily sought to achieve. Importantly, the Settlement Agreement reflects the Parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiffs believe strongly in their claims, and at the same time they understand that the great number of uncertainties and the substantial delay in a final litigated resolution weigh in favor of an immediate, guaranteed resolution of the litigation that provides substantial relief. As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

### 3. The Effectiveness of Administration

The Parties have agreed to use Kroll—an experienced class action notice provider and

19

administrator—as the Settlement Administrator in this case. Kroll's qualifications and the proposed Notice Plan are outlined in the Declaration of Jeanne C. Finegan, attached hereto as Exhibit 4. Plaintiffs' counsel obtained multiple bids to meet the needs of this case and minimize the costs of notice and administration, which will be paid from the Settlement Fund. Ex. 3 ¶ 38.

For this case, the Settlement Administrator has formulated a robust Notice Plan that encompasses direct written notice to the class through various means, as well as notice published on the Settlement website. *See* Ex. 4. The Class List has been identified by Defendant, and the Settlement Notice will be directly sent by first-class U.S. mail, electronic mail, and/or SMS Text, and will also be published on the settlement website. In addition, to supplement the various forms of direct notice, Kroll will provide additional notice by publication. This Notice Plan is more than sufficient in a class action like the instant case, particularly where members of the class have been identified by the Defendant, and most class members will receive "individual notice to all members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B).

The Notice Plan will clearly inform the class of their rights to opt out, to object, or to file a claim, as well as the mechanisms and deadlines for doing so, and will include all the information required by Rule 23. After the notice period, the Settlement Administrator will be responsible for reviewing all claim forms to determine whether a claim is approved. The Settlement Administrator will notify a claimant if his or her claim appears deficient. Upon notification, a Settlement Class Member may cure the deficiency in his or her claim within thirty (30) days of the Settlement Administrator providing notice of the deficiency. Moreover, Class Counsel can advise the Settlement Administrator with respect to the disposition of claims, and the Settlement Class Member can request a claims referee if not satisfied with the disposition of a claim. *See* Ex. 2 ¶ 11(b).

4.        **The Experience and Views of Counsel**

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement when they have litigated the case as Plaintiffs' counsel have done in this litigation. *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at *3-4 (W.D. Mo. Nov. 16, 2011) (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate).

Plaintiffs and proposed Class Counsel strongly believe the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. Class Counsel have substantial experience serving as lead counsel in numerous complex actions, including other data breach cases. Ex. 3 ¶¶ 3-11; *see also Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 451 F.3d 528, 537 (8th Cir. 2006) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.") (quoting *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980)). Based on their experience, Class Counsel believe the Settlement provides exceptional results for Settlement Class Members while avoiding the uncertainties of continued and protracted litigation. Ex. 3 ¶ 11. Therefore, a strong initial presumption of fairness should attach to the proposed settlement as it was reached by well-qualified counsel engaged in arm's-length negotiations with an experienced mediator. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)

(citing *Little Rock Sch. Dist.*, 921 F.2d at 1391).

### 5. The Proposed Fees, Expenses, and Service Awards

Pursuant to the Settlement Agreement, Class Counsel may apply for Attorneys' Fees not to exceed 30% of the cash Settlement Fund of $350 million. Ex. 1 ¶ 19.2. Although Class Counsel have yet to move for fees in this case, an award of one-third of the settlement fund is characteristic of other awards in class action suits in this Circuit and surrounding District Courts. *See Huyer v. Buckley*, 849 F.3d 395, 389–99 (8th Cir. 2017) (finding the district court did not abuse its discretion in awarding attorneys' fees that were one-third of the total settlement fund); *In re Life Time Fitness, Inc. Telephone Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622–624 (8th Cir. 2017) (affirming the district court's fee award of 28% of the settlement fund); *In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 1002) (finding the district court did not abuse its discretion in award attorneys' fees that were 36% of the total settlement fund); *see also Bishop, et al v. DeLaval Inc.* 5:19-cv-06129-SRB (W.D. Mo. June 7, 2022) at Doc. 268 (approving fee of one-third of the settlement fund) and Doc. 271 (issuing final approval of settlement); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1110 (D. Kan. 2018) (same). Consistent with the Settlement and Rule 23(h), Class Counsel will separately move for an award of fees and costs prior to the Objection Deadline, and the Court will have a full opportunity to consider the appropriate fees as part of the final approval process.

Likewise, Class Counsel will also seek reimbursement of expenses from the Settlement Fund. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses, and the Court may make a preliminary finding that such costs are reasonable. *See* 2 Joseph M. McLaughlin, McLaughlin on Class Actions § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the

litigation"). As with the motion for attorney's fees, the Court will have a full opportunity to consider these expenses at the final approval phase of the proceedings.

Finally, Class Counsel intends to seek Service Awards in the amount of $2,500 for each Settlement Class representative. Pending a full motion on the requested Service Awards, the Court can conclude this amount is likely reasonable given the work Settlement Class Representatives performed in the case, including time-consuming fact gathering and assisting Class Counsel in finalizing the Settlement Agreement and Benefits Plan. Ex. 3 ¶ 43. As with the motion for fees and reimbursement of costs and expenses, the Court will have a full opportunity to evaluate the request for such awards following the submission of a separate motion.

**D.      The Proposal Treats Settlement Class Members Equitably**

The Settlement treats Settlement Class members equitably relative to each other. All Settlement Class Members are eligible for Identity Defense Services and Restoration Services as well as monetary reimbursement for Out-of-Pocket Losses and Lost Time or an Alternative Cash Payment, and all Settlement Class Members will benefit from T-Mobile's increased spending on data security, which are consistent remedies appropriate for all Settlement Class Members.

The Settlement provides that the Alternative Cash Payment available to California Settlement Subclass Members is $100, whereas the Alternative Cash Payment available to all other Settlement Class Members is $25. Ex. 2 ¶ 5. This difference reflects the availability of statutory damages under the California Consumer Privacy Act ("CCPA"), a unique state law intended to provide recourse to Californians who are victims of a data breach. *See* Cal. Civ. Code § 1798.150(a)(1)(A). That California Settlement Subclass Members may elect to receive a larger Alternative Cash Payment in lieu of reimbursement for Out-of-Pocket Losses and Lost Time does not render the proposal inequitable. There is no difference between Settlement Class Members and California Settlement Subclass Members who are eligible to receive at least $100 of

reimbursement for Out-of-Pocket Losses and Lost Time, such as those who claim at least four hours of lost time at $25 per hour—all such Class Members are eligible to receive the same amount of monetary reimbursement.

Further, with respect to those who elect to receive Alternative Cash Payment, case law is clear that theoretical statutory damages available to some but not all class members do not create a fundamental intraclass conflict of interest or require subclass counsel. *See, e.g.*, *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021); *In re Target Corp. Customer Data Security Breach Litig.*, 2017 WL 2178306, at *3 (D. Minn. May 17, 2017); *In re Anthem Inc. Data Breach Litig.*, 327 F.R.D. 299, 322–23 (N.D. Cal. 2018). In this regard, "[a] nationwide settlement need not account for differences in state laws." *Rawa v. Monsanto Co.*, 934 F.3d 862, 869 (8th Cir. 2019) (citing *Keil v. Lopez*, 862 F.3d 685, 700 (8th Cir. 2017)); *see also Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 907 (8th Cir. 2018) ("[A] settlement agreement is not rendered unfair because it does not account for differences in state laws."). By the same token, a settlement *may* account for differences in state law such as the availability of minimum statutory damages under the CCPA. *See, e.g.*, *Keil*, 862 F.3d at 700 (rejecting objection that settlement must account for differences in state law, collecting cases approving settlements that permissibly accounted for differences in state law, and emphasizing that "any class member may elect to preserve what he believes to be a claim worth more than what he may receive under the settlement—opt out") (quoting *Marshall*, 787 F. 3d at 520); Newberg on Class Actions § 3:60 (6th ed.) ("The size of a plaintiff's individual claim as compared to those of other class members is immaterial to the adequacy inquiry under Rule 23.").

## VII.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

To grant preliminary approval and direct notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B); *Amchem Prods.*

*Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23 requires that an action satisfy the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

## A.    The Rule 23(a) Requirements Are Satisfied

Federal Rule of Civil Procedure 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Each of these elements is satisfied here.

### 1.    Numerosity

The Class includes approximately 76.6 million Class Members, which is sufficiently numerous to satisfy Rule 23(a)(1), which requires that the class be sufficiently numerous that joinder of all members would be impracticable. "In considering this requirement, courts examine the number of persons in the proposed class and factors such as the nature of the action, the size of the individual claims, and the inconvenience of trying the individual claims." *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 551 (W.D. Mo. 2014) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)). It would be impractical to join this many individual plaintiffs, who reside across the United States, to a single lawsuit; thus, the numerosity requirement is satisfied. *See id.* at 551 (certifying class of "at least 133" persons dispersed across multiple states); *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 457 (W.D. Mo. 2004) (joining "as few as 40 class members should raise a presumption that joinder is impracticable" (quoting 2 W. Rubenstein, Newberg on Class Actions, § 3.05 at 3-25)).

### 2.    Commonality

Rule 23(a)(2) requires only a single common question of law or fact that is central to the

dispute. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do") (internal quotations omitted). Commonality is established if plaintiffs and class members' claims "depend upon a common contention" that is "capable of class-wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Plaintiffs' claims present many common questions of law and fact regarding T-Mobile's data security. Plaintiffs allege that T-Mobile's actions and/or omissions with respect to the Data Breach harmed all Class Members. In this regard, the claims of the Class Members all rise or fall based on T-Mobile's actions and/or omissions, which were made in a uniform manner to all Settlement Class Members. Plaintiffs have alleged claims that raise numerous common issues with common answers, including but not limited to:

- Whether T-Mobile had a duty and/or contractual obligations to safeguard Plaintiffs' and Settlement Class Members' PII;

- Whether T-Mobile breached its duty and/or contractual obligations to safeguard Plaintiffs' and Settlement Class Members' PII;

- Whether T-Mobile's alleged failures to safeguard Plaintiffs' and Settlement Class Members' PII resulted in the Data Breach;

- Whether Plaintiffs and Settlement Class Members were injured and suffered damages as a result of the Data Breach;

- Whether T-Mobile has been unjustly enriched as a result of its alleged failures to safeguard Plaintiffs' and Settlement Class Members' PII; and

- Whether Plaintiffs and Settlement Class Members are entitled to monetary damages or other relief.

Accordingly, these common issues satisfy the commonality requirement of Rule 23.

### 3.    Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of those of the class. This requirement "is fairly easily met so long as other class members have claims

similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). In assessing typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

The claims of Plaintiffs and the Settlement Class arise from the same event or course of conduct: the August 2021 Data Breach that exposed their PII. Plaintiffs' claims are typical because they, like all members of the Settlement Class, provided their PII to T-Mobile. T-Mobile owed a duty and was contractually obligated to protect and keep that information secure. Plaintiffs, like all other members of the Settlement Class, have sustained injury and damages as a result of T-Mobile's uniform breach of its duty and contractual obligations to adequately safeguard that information. Plaintiffs' claims arise out of the same course of conduct, are based on the same legal theories, seek the same types of damages as those of the Settlement Class, and meet all necessary standing requirements; therefore, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) similarly tests whether the proposed class representatives and class counsel will "fairly and adequately protect the interests of the class." Rule 23(a)(4). This requirement is satisfied where: "1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004) (internal quotation marks omitted). The requirement of adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625.

There are no inherent conflicts here. The proposed Settlement Class Representatives do not have any conflicts with the absent proposed Settlement Class Members, as all proposed Settlement

27

Class Members will benefit from holding T-Mobile accountable for its failure to safeguard Plaintiffs' and Class Members' PII, and as such Plaintiffs' claims are coextensive with those of the Settlement Class Members. Moreover, Plaintiffs have demonstrated their commitment to the class by vigorously representing the interests of the proposed class: they hired experienced class counsel, have read and understood the allegations of the Complaint, and are dedicated to prosecuting this matter on behalf of the class.

Proposed Class Counsel are qualified and experienced in conducting class action litigation, particularly those cases involving data privacy. Ex. 3 ¶¶ 3-11. They are experienced in both prosecuting and trying class actions and have incurred significant costs and risks in this litigation by performing extensive work to identify and investigating potential claims in this Action, establishing the factual bases for the claims sufficient to prepare a detailed class action complaint, and evaluating confidential discovery for the purposes of negotiating a fundamentally fair and reasonable settlement.

For these reasons, the Court should appoint Norman E. Siegel of Stueve Siegel Hanson LLP, Cari Campen Laufenberg of Keller Rohrback L.L.P., and James J. Pizzirusso of Hausfeld LLP as Class Counsel and appoint the plaintiffs listed in Exhibit B to the Settlement Agreement as Class Representatives. Class Counsel will continue to work with the Plaintiffs' Executive Committee and Plaintiffs' Liaison Counsel in implementing the Settlement and performing other necessary tasks consistent with the proposed Preliminary Approval Order.

**B.      The Rule 23(b)(3) Requirements Are Satisfied**

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies Rule 23(b)(3).

### 1.    Predominance

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. *See* Fed. R. Civ. P. 23(b)(3) and Advisory Committee Note – 1966 Amendment on Rule 23(b)(3). Plaintiffs are not required to prove that each element of their claims is "susceptible to classwide proof." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (citation omitted). Rather, the predominance inquiry measures the relative weight of the common questions as against individual ones. *Amchem*, 521 U.S. at 624. The predominance requirement is satisfied when plaintiffs and class members share a common claim that is "capable of classwide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity . . . in one stroke." *Dukes*, 564 U.S. at 350. Common issues predominate here, because the central questions at issue in this litigation can be established through generalized evidence.

The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because questions common to Settlement Class Members predominate over questions affecting only individual Settlement Class Members. Plaintiffs' claims for negligence, negligence *per se*, breach of confidence, invasion of privacy, breaches of express and implied contract, and unjust

enrichment raise common issues capable of classwide resolution, and these issues predominate over any questions that would affect individual Settlement Class Members. Each of these causes of action concerns the same fundamental questions of fact and law regarding T-Mobile's conduct and the Data Breach, including those questions outlined above.

The resolution of these common issues revolves around common evidence that does not vary among Settlement Class Members, so they can be fairly resolved for all Settlement Class Members at once. Similarly, resolving these questions as to one claim would resolve the other claims as well. *See In re Anthem*, 327 F.R.D. at 314 (the "main issue" of the plaintiffs' contract and negligence claims "boils down to the common factual contention of whether [the defendant's] data security levels were reasonable"). These common questions are "central to the validity of each one of the claims" and may be resolved "in one stroke." *See Dukes*, 564 U.S. at 350. Here, Settlement Class Members were all allegedly harmed by the same conduct, and common factual and legal issues overwhelmingly predominate over individualized concerns.

### 2. Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." Charles Wright, Arthur Miller & Mary Kay Kane, 7AA Fed. Prac. & Proc. Civ. § 1779 (3d ed. 2005). A class action represents the only realistic means through which the approximately 76.6 million Settlement Class Members may obtain relief due to the amount in dispute for individual Class Members, the complexity of the technical issues involved in the Data Breach, and the costly expert testimony and document review that this case requires. The superiority requirement thus is satisfied. *See In re Anthem*, 327 F.R.D. at 315-16; *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[T]he more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class 17 million suits each seeking

damages of \$15 to \$30. . . . The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for \$30") (quoting *Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

The class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Accordingly, the class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Settlement Class Members, as in other data breach cases where classwide settlements have been approved. *See, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019); *In re Anthem*, 327 F.R.D. 299.

## VIII. APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES

Under Rule 23(g), "a court that certifies a class must appoint class counsel . . . [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider: (1) the proposed class counsel's work in identifying or investigating potential claims; (2) the proposed class counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) the proposed class counsel's knowledge of the applicable law; and (4) the proposed class counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above, Co-Lead Interim Class Counsel have spent a significant amount of time identifying the potential claims in this action and pursuing relevant discovery. They are recognized as experts in consumer law and class-action litigation, particularly in the context of data breach and data privacy litigation and have been appointed class counsel in major consumer class action cases. *See* Ex. 3 ¶¶ 3-11. Further, they have committed their full resources to representing the Settlement Class and will continue that commitment in resolving this case and administering the Settlement. *See id.* ¶ 53.

Accordingly, the Court should appoint Norman E. Siegel of Stueve Siegel Hanson LLP, Cari Campen Laufenberg of Keller Rorback L.L.P., and James J. Pizzirusso of Hausfeld LLP as Class Counsel.

The Court should also appoint the plaintiffs identified in Exhibit B as Settlement Class Representatives for the Settlement Class and, as applicable, the California Settlement Subclass. Settlement Class Representatives have fulfilled their duties in pursuing their claims and those of Settlement Class Members in this matter, and they have vigorously represented the interests of the Settlement Class. *See id.* ¶ 43. Settlement Class Representatives are pursuing this case on behalf of all Settlement Class Members, they are fulfilling their duty to protect the interests of all Settlement Class Members, and they do not have any conflicts of interest with any other members of the Settlement Class. *Id.* ¶¶ 50-51. Plaintiffs will fairly and adequately represent and protect the interests of the Settlement Class as Class Representatives.

## IX. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

Rule 23(e)(1) requires that, prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights to opt out or to object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the primary form of direct, individual notice will be through text message, email, and

direct mail. Ex. 4 ¶¶ 13-20. The proposed notices here, attached as Exhibit 5, comply with Rule 23(c)(2)(B), in that they "clearly and concisely state in plain, easily understood language" a description of the Settlement Class, a description of the claims, the names of Class Counsel, a description of Settlement Class Members' opportunity to appear at the Final Approval Hearing, opt-out and objection specifics, and the manner in which to obtain further information. *See* Fed. R. Civ. P. 23(c)(2)(B); Ex. 5 (proposed forms of notice). The Notice Plan is thus consistent with the requirements of Fed. Civ. P. 23(c)(2)(B), Federal Judicial Center guidelines for notice, and other similar court-approved notice plans. Further, the Notice Plan has been reviewed to ensure it meets due process requirements. Ex. 4 ¶ 3. Likewise, the claims process is also designed to be as straightforward as possible, including a simple online claims form or, if preferred, a paper form that can be mailed to the Settlement Administrator. *Id.* ¶ 24; Ex. 6, Claim Form.

In connection with implementation of the Notice Plan and administration of the Settlement benefits, Plaintiffs request the Court to appoint Kroll to serve as the Settlement Administrator. Kroll is qualified and has administration experience in similar matters. *See generally* Ex. 4.

Because the class notices and Notice Plan set forth in the Settlement satisfy the requirements of due process and Rule 23, the Court should direct the Parties and the Settlement Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement and the Court's order granting preliminary approval.

## X. RELATED ACTIONS AND PROCEEDINGS SHOULD BE STAYED OR ENJOINED UNLESS CLASS MEMBERS OPT OUT OF THE SETTLEMENT CLASS

As contemplated by the Settlement Agreement and proposed Preliminary Approval order, in order to ensure orderly settlement proceedings, Plaintiffs request the Court temporarily enjoin class members from commencing or pursuing related proceedings until they exclude themselves from the Settlement Class. **Importantly, the requested injunction does not apply to individuals**

**who have already initiated arbitrations relating to the Data Breach OR provided written notice to T-Mobile of their intent to pursue arbitration relating the Data Breach on or before the date the Court enters the Preliminary Approval Order. Those individuals are *excluded* from the Settlement Class.** Ex. 1 ¶ 2.36.

It is well recognized that "where a federal court is on the verge of settling a complex matter" it may enter an injunction against related proceedings. *In re School Asbestos Litig.*, No. 83-0268, 1991 WL 61156, at *2 (E.D. Pa. Apr. 16, 1991), *aff'd*, 950 F.2d 723 (3d Cir. 1991) (quoting *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir. 1990)); *see also Liles*, 350 F.3d at 746 ("Injunctions of related proceedings in other federal courts are appropriate when necessary for adjudication or settlement of a case.") (citing *White v. Nat'l Football League*, 41 F.3d 402, 409 (8th Cir.1994)); *Prater v. Medicredit, Inc.*, No. 4:14-CV-00159, 2015 WL 4385682, at *4 (E.D. Mo. July 13, 2015) (granting preliminary approval and enjoining plaintiffs and settlement class members from participating in related proceedings "unless and until they have timely excluded themselves" from the proposed settlement); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. CV 17-2832, 2020 WL 869980, at *4 (D. Minn. Feb. 21, 2020) ("'Even before a federal judgment is reached [ ] the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction.'") (quoting *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985)). Under the All Writs Act, 28 U.S.C. § 1651, a court may under the circumstances here "temporarily enjoin class members from pursuing parallel litigation during the notice and opt-out period in a complex class action." *In re CenturyLink*, 2020 WL 869980, at *4.

Simply put, the requested temporary injunction will protect the Court's jurisdiction and avoid disrupting the approval proceedings and the class members' exercise of their rights under

34

the Settlement. Conversely, allowing members of the Settlement Class to proceed with other proceedings when they have not opted out of the Settlement could require T-Mobile to defend claims in such actions, pay unnecessary expenses, and risk conflicting judgments with respect to Settlement Class Members who remain bound by the Settlement. By requiring them to opt out *before* pursuing a separate action the Court will ensure fair and orderly proceedings.

The requested temporary injunction will not cause any prejudice to individual Settlement Class Members or interfere with their rights to pursue other actions. Those who wish to proceed with such actions can simply opt out in accordance with the Settlement and thereby lift the injunction as it applies to them. *See In re CenturyLink*, 2020 WL 869980, at *5 ("The Court's Order set forth an orderly, efficient manner for class members to opt out and, thus, pursue parallel actions, including lawsuits and arbitrations, with little delay."); *In re Glenn W. Turner Enters. Litig.*, 521 F.2d 775, 778 (3d Cir. 1975) ("The restraint on prosecution of other actions is not absolute; a party need only exclude himself from the class actions to be free of the restraint.").

For these reasons, the Court should enter the proposed stay and temporary injunction.

## XI.    PROPOSED SCHEDULE FOR INTERMEDIATE DEADLINES AND FINAL APPROVAL HEARING

Plaintiffs request that the Court set a Final Approval Hearing at least one hundred and sixty (160) days after the date a preliminary approval order is entered. This will allow sufficient time for the Settlement Administrator to provide Notice to the class and for class members who wish to opt out or object to do so, but will not delay relief to the Settlement Class any more than necessary. Plaintiffs respectfully propose the following schedule:

| EVENT | DATE |
|---|---|
| T-Mobile Provides Class List and Identification of Arbitrations | No later than 30 days after entry of the Preliminary Approval Order |
| Notice Date | No later than 90 days after entry of the Preliminary Approval Order |

| EVENT | DATE |
|---|---|
| Plaintiffs to File Motion for Attorneys' Fees, Costs, and Incentive Awards | 21 days prior to Deadline for Class Members to Object to the Settlement |
| Deadline for Class Members to Opt-Out of Settlement | 45 days after Notice Date |
| Deadline for Class Members to Object to Settlement | 45 days after Notice Date |
| Deadline for Class Members to Submit Claim Forms | 90 days after Notice Date |
| Plaintiffs to File Motion for Final Approval and Responses to Objections | 10 days prior to Final Approval Hearing |
| Proof of Notice Submitted | 10 days prior to the Final Approval Hearing |
| Final Approval Hearing | To be set by the Court, at least 160 days after entry of the Preliminary Approval Order |

## XII.    CONCLUSION

The Settlement Agreement proposed is an immediate, substantial, and fair settlement. It achieves the goals of the litigation, benefits the entire Settlement Class, and accounts for the risks and uncertainties of continued, vigorously contested litigation. Plaintiffs therefore respectfully request that the Court grant the Motion and enter the agreed proposed Preliminary Approval Order (Exhibit 3 to the Settlement Agreement) submitted contemporaneously with this Motion.

Respectfully submitted this 22nd day of July, 2022.

*/s/ Norman E. Siegel*
Norman E. Siegel, MO #44378
STUEVE SIEGEL HANSON LLP
460 Nichols Rd., Ste. 200
Kansas City, MO 64112
siegel@stuevesiegel.com

Cari Campen Laufenberg (*pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
claufenberg@kellerrohrback.com

James J. Pizzirusso (*pro hac vice*)
HAUSFELD LLP
888 16th St. NW, Ste. 300
Washington, DC 20006
jpizzirusso@hausfeld.com

*Co-Lead Interim Class Counsel*