In re: T-Mobile Customer Data Security Breach Litigation

------------------------------

Veera Daruwalla, Washington Western, 2:23-cv-01118; John G. Cooke, Washington Western, 2:21-cv-01324; Michael March, Washington Western, 2:21-cv-01118; Peter Luna, Washington Western, 2:21-cv-01324; Lavicicia Sturdivant, Washington Western, 2:21-cv-01118; Leotha Scott-Boone, Washington Western, 2:21-cv-01324; Stephanie Espanoza, Washington Western, 2:21-cv-01119; Jack Precour, Washington Western, 2:21-cv-01415; Alex Pygin, Washington Western, 2:21-cv-01119; William Captain Reed, Washington Western, 2:21-cv-01415; Stephen J. Vash, Georgia Northern, 1:21-cv-03384; Cesar Lopez, Washington Western, 2:21-cv-01415; Jonathan Morales, Washington Western, 2:21-cv-01119; Edmund Metzger, New York Eastern, 2:21-cv-04721; Thomasina Enoch, Washington Western, 2:21-cv-01415; Judith Weil, New York Eastern, 2:21-cv-04721; Marshall P. Jones, Jr., Washington Western, 2:21-cv-01415; Zorka Lipovic, New York Eastern, 2:21-cv-04721; Cornelia Clay Fulghum, Washington Western, 2:21-cv-01415; Maria Rapestkaya, New York Eastern, 2:21-cv-04721; Linda Song, Washington Western, 2:21-cv-01460; William Mabe, New York Eastern, 2:21-cv-04721; Rachel Gurley, Washington Western, 2:21-cv-01460; Marina Lipovic, New York Eastern, 2:21-cv-04721; Andrew Luna, Washington Western, 2:21-cv-01460; Dejan Dex Lipovic, New York Eastern, 2:21-cv-04721; Melani Gordon, Washington Western, 2:21-cv-01460; Aleksandar Lipovic, New York Eastern, 2:21-cv-04721; Leon Carp, Washington Western, 2:21-cv-01130; Daniela Lipovic, New York Eastern, 2:21-cv-04721; Crystal Lam, Washington Western, 2:21-cv-01137; Nikola Lipovic, New York Eastern, 2:21-cv-04721; Nina Phan, Washington Western, 2:21-cv-01137; Henry Thang, California Northern, 5:21-cv-06473; Deirdre C. Donovan, Washington Western, 2:21-cv-01138; James Achermann, California Northern, 3:21-08995; Beth Byrd, Washington Western,

2:21-cv-01138; Franklin Hughes, Washington Western, 2:21-cv-01139; Allan Speilman, Washington Western, 2:21-cv-01138; Ania Villalon, Washington Western, 2:21-cv-01148; Cory Barton, Texas Southern, 7:21-cv-00322; Randall Norris, Washington Western, 2:21-cv-01153; Mark Savick, New Jersey, 3:21-cv-16005; Misty Norris, Washington Western, 2:21-cv-01153; Hassan Sadrgilany, New Jersey, 3:21-cv-16155; Valerie Rogoff, Washington Western, 2:21-cv-01157; Deborah Dames, New Jersey, 3:21-cv-16155; Michael Harper, Washington Western, 2:21-cv-01169; Raymond Christie, New Jersey, 3:21-cv-16181; Sue Harper, Washington Western, 2:21-cv-01169; Ivette Delerme, New Jersey, 3:21-cv-16299; Melanie Jaquess, Washington Western, 2:21-cv-01169; Thomas Macnish, New Jersey, 3:21-CV-16299; Chuck Sallade, Washington Western, 2:21-cv-01169; Jose Palomino, New Jersey, 3:21-cv-16536; Michael Malone, Washington Western, 2:21-cv-01169; Jessica Tuck, New Jersey, 3:21-cv-16536; Timothy Akins, Washington Western, 2:21-cv-01179; Vagish Shanmukh, California Northern, 5:21-cv-07581; Tara Millhouse, Washington Western, 2:21-cv-01179; Brian Grady, Oklahoma Western, 5:21-cv-00838; Pamela Lane, Washington Western, 2:21-cv-01179; Michael Jones, Oklahoma Western, 5:21-cv-00838; Cedric Gay, Washington Western, 2:21-cv-01179; Alexis Lomax, Nevada, 2:21-cv-01764; Lori Williams, Washington Western, 2:21-cv-01179; Richard Wellman, Washington Western, 2:21-cv-01250; Bryan Morton, Washington Western, 2:21-cv-01179; Audreana Lauren Lang, California Northern, 5:21-cv-06879; Sajan George, Washington Western, 2:21-cv-01179; Tiffany Bensen, New York Western, 6:21-cv-06628; Cynthia Halton, Washington Western, 2:21-cv-01179; Stuart Schupler, Washington Western, 2:21-cv-01161; Sean Jordan, Washington Western, 2:21-cv-01179; Naimatullah Nyazee, Missouri Eastern, 4:21-cv-01517; Terri Marble, Washington Western, 2:21-cv-01179; Tisha Soto; David H. Feinberg, California Central, 2:21-cv-07531; Mario Gordon, Washington Western, 2:21-cv-01460; Lisa M. Jackson, California Central, 2:21-cv-07531; Diego Quintanilla, Washington Western, 2:21-cv-01415; Lakisatha D. King, California Central, 2:21-cv-07531; Park Sutton; Daniel Simaan, Washington Western, 2:21-cv-01181; William Burt; Alexis Huerta, Washington Western, 2:21-cv-01183; Devon Avery, Washington Western, 2:21-cv-01189; Blondel Garner, Washington Western, 2:21-cv-01189; Brian Hayes, Washington Western, 2:21-cv-01189; Daniel Moon, Washington Western, 2:21-cv-01189; Timothy Ryan, Washington Western, 2:21-cv-01189; Sheila Hamilton-Bynum, Washington Western, 2:21-cv-01190; Daniel Strenfel, Washington Western, 2:21-cv-01208; Richard Halpern, Washington Western,

-2-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 2 of 20
Appellate Case: 23-2744   Page: 2   Date Filed: 07/29/2024 Entry ID: 5417876

2:21-cv-01226; Mark Glinoga, Washington Western, 2:21-cv-01245; James Smith, Washington Western, 2:21-cv-01245; Jennifer Stephens, Washington Western, 2:21-cv-01245; Charles Popp, Washington Western, 2:21-cv-01245; Rudolph Winn, Washington Western, 2:21-cv-01245; Stephanie Miller, Washington Western, 2:21-cv-01245; Karla Williams, Washington Western, 2:21-cv-01245; Chris Jarvis, Washington Western, 2:21-cv-01245; Matthew Brackman, Washington Western, 2:21-cv-01277; Dinah Augustin, Washington Western, 2:21-cv-01321

*Plaintiffs - Appellees*

v.

T-Mobile US, Inc.; Does, 1 through 100, California Central, 2:21-cv-07531; T-Mobile USA, Inc.

*Defendants*

Cassie Hampe

*Objector - Appellant*

_____

No. 23-2798
_____

In re: T-Mobile Customer Data Security Breach Litigation

-------------------------------

Veera Daruwalla, Washington Western, 2:23-cv-01118; Peter Luna, Washington Western, 2:21-cv-01324; Michael March, Washington Western, 2:21-cv-01118; Lavicicia Sturdivant, Washington Western, 2:21-cv-01118; Leotha Scott-Boone, Washington Western, 2:21-cv-01324; Jack Precour, Washington Western, 2:21-cv-01415; Stephanie Espanoza, Washington Western, 2:21-cv-01119; John G. Cooke, Washington Western, 2:21-cv-01324; Alex Pygin, Washington Western, 2:21-cv-01119; William Captain Reed, Washington Western, 2:21-cv-01415; Stephen J. Vash, Georgia Northern, 1:21-cv-03384; Cesar Lopez,

-3-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 3 of 20
Appellate Case: 23-2744   Page: 3   Date Filed: 07/29/2024 Entry ID: 5417876

Washington Western, 2:21-cv-01415; Jonathan Morales, Washington Western, 2:21-cv-01119; Edmund Metzger, New York Eastern, 2:21-cv-04721; Thomasina Enoch, Washington Western, 2:21-cv-01415; Judith Weil, New York Eastern, 2:21-cv-04721; Marshall P. Jones, Jr., Washington Western, 2:21-cv-01415; Zorka Lipovic, New York Eastern, 2:21-cv-04721; Cornelia Clay Fulghum, Washington Western, 2:21-cv-01415; Maria Rapestkaya, New York Eastern, 2:21-cv-04721; Linda Song, Washington Western, 2:21-cv-01460; William Mabe, New York Eastern, 2:21-cv-04721; Rachel Gurley, Washington Western, 2:21-cv-01460; Marina Lipovic, New York Eastern, 2:21-cv-04721; Andrew Luna, Washington Western, 2:21-cv-01460; Dejan Dex Lipovic, New York Eastern, 2:21-cv-04721; Melani Gordon, Washington Western, 2:21-cv-01460; Aleksandar Lipovic, New York Eastern, 2:21-cv-04721; Leon Carp, Washington Western, 2:21-cv-01130; Daniela Lipovic, New York Eastern, 2:21-cv-04721; Crystal Lam, Washington Western, 2:21-cv-01137; Nina Phan, Washington Western, 2:21-cv-01137; Nikola Lipovic, New York Eastern, 2:21-cv-04721; Deirdre C. Donovan, Washington Western, 2:21-cv-01138; Henry Thang, California Northern, 5:21-cv-06473; Beth Byrd, Washington Western, 2:21-cv-01138; James Achermann, California Northern, 3:21-08995; Franklin Hughes, Washington Western, 2:21-cv-01139; Allan Speilman, Washington Western, 2:21-cv-01138; Ania Villalon, Washington Western, 2:21-cv-01148; Cory Barton, Texas Southern, 7:21-cv-00322; Mark Savick, New Jersey, 3:21-cv-16005; Randall Norris, Washington Western, 2:21-cv-01153; Misty Norris, Washington Western, 2:21-cv-01153; Hassan Sadrgilany, New Jersey, 3:21-cv-16155; Valerie Rogoff, Washington Western, 2:21-cv-01157; Deborah Dames, New Jersey, 3:21-cv-16155; Michael Harper, Washington Western, 2:21-cv-01169; Raymond Christie, New Jersey, 3:21-cv-16181; Sue Harper, Washington Western, 2:21-cv-01169; Ivette Delerme, New Jersey, 3:21-cv-16299; Melanie Jaquess, Washington Western, 2:21-cv-01169; Thomas Macnish, New Jersey, 3:21-CV-16299; Chuck Sallade, Washington Western, 2:21-cv-01169; Jose Palomino, New Jersey, 3:21-cv-16536; Michael Malone, Washington Western, 2:21-cv-01169; Jessica Tuck, New Jersey, 3:21-cv-16536; Timothy Akins, Washington Western, 2:21-cv-01179; Vagish Shanmukh, California Northern, 5:21-cv-07581; Tara Millhouse, Washington Western, 2:21-cv-01179; Brian Grady, Oklahoma Western, 5:21-cv-00838; Pamela Lane, Washington Western, 2:21-cv-01179; Michael Jones, Oklahoma Western, 5:21-cv-00838; Cedric Gay, Washington Western, 2:21-cv-01179; Alexis Lomax, Nevada, 2:21-cv-01764; Lori Williams, Washington Western, 2:21-cv-01179; Richard Wellman, Washington Western, 2:21-cv-01250; Bryan

-4-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 4 of 20
Appellate Case: 23-2744   Page: 4   Date Filed: 07/29/2024 Entry ID: 5417876

Morton, Washington Western, 2:21-cv-01179; Audreana Lauren Lang, California Northern, 5:21-cv-06879; Sajan George, Washington Western, 2:21-cv-01179; Tiffany Bensen, New York Western, 6:21-cv-06628; Cynthia Halton, Washington Western, 2:21-cv-01179; Stuart Schupler, Washington Western, 2:21-cv-01161; Sean Jordan, Washington Western, 2:21-cv-01179; Naimatullah Nyazee, Missouri Eastern, 4:21-cv-01517; Terri Marble, Washington Western, 2:21-cv-01179; Tisha Soto; David H. Feinberg, California Central, 2:21-cv-07531; Mario Gordon; Lisa M. Jackson, California Central, 2:21-cv-07531; Diego Quintanilla, Washington Western, 2:21-cv-01415; Lakisatha D. King, California Central, 2:21-cv-07531; Park Sutton; Daniel Simaan, Washington Western, 2:21-cv-01181; William Burt; Alexis Huerta, Washington Western, 2:21-cv-01183; Devon Avery, Washington Western, 2:21-cv-01189; Blondel Garner, Washington Western, 2:21-cv-01189; Brian Hayes, Washington Western, 2:21-cv-01189; Daniel Moon, Washington Western, 2:21-cv-01189; Timothy Ryan, Washington Western, 2:21-cv-01189; Sheila Hamilton-Bynum, Washington Western, 2:21-cv-01190; Daniel Strenfel, Washington Western, 2:21-cv-01208; Richard Halpern, Washington Western, 2:21-cv-01226; Mark Glinoga, Washington Western, 2:21-cv-01245; James Smith, Washington Western, 2:21-cv-01245; Jennifer Stephens, Washington Western, 2:21-cv-01245; Charles Popp, Washington Western, 2:21-cv-01245; Rudolph Winn, Washington Western, 2:21-cv-01245; Stephanie Miller, Washington Western, 2:21-cv-01245; Karla Williams, Washington Western, 2:21-cv-01245; Chris Jarvis, Washington Western, 2:21-cv-01245; Matthew Brackman, Washington Western, 2:21-cv-01277; Dinah Augustin, Washington Western, 2:21-cv-01321

*Plaintiffs - Appellees*

v.

T-Mobile US, Inc.; Does, 1 through 100, California Central, 2:21-cv-07531; T-Mobile USA, Inc.

*Defendants*

John Pentz, as representative to the Estate of Connie Pentz

*Objector - Appellant*
_____

-5-

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 11, 2024
Filed: July 29, 2024

_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After cybercriminals hacked into computer systems belonging to T-Mobile US, Inc., a telecommunications company, and stole the personal information of its customers, several of them sued T-Mobile. A class of customers and T-Mobile settled their dispute, and the attorneys representing the class requested $78.75 million in attorneys' fees for their efforts. When two class members objected on the ground that the request was excessive, the district court struck their objections and overruled them on the merits as well. The two objectors appeal. We hold that the court abused its discretion in striking one of the objections, and we reverse the award of attorneys' fees and remand for reconsideration.

T-Mobile collects and maintains confidential personal information for millions of its current, former, and prospective customers. During the data breach in question, hackers obtained confidential personal information for an estimated 76.6 million people and sold or attempted to sell it. Customers responded by filing a bevy of class actions against T-Mobile in courts across the country. In December 2021, the Judicial Panel on Multidistrict Litigation centralized them in the U.S. District Court for the Western District of Missouri. According to the parties' settlement agreement, more than forty class actions relating to the data breach were transferred to the district court for coordinated pretrial proceedings.

-6-

In January 2022, the district court invited attorneys to apply for leadership roles in coordinating pretrial proceedings. *See* Fed. R. Civ. P. 23(g)(3). After receiving and considering nearly three dozen applications, the court the following month appointed three attorneys as co-lead interim class counsel, one attorney as "liaison counsel" to be the primary contact between the court and counsel, and eight attorneys as members of an executive committee. The court assigned the co-lead interim class counsel the task of coordinating settlement or other dispute-resolution efforts.

A few months later, class counsel filed a complaint on behalf of 64 named plaintiffs from around the country and on behalf of a class of similarly situated customers. The complaint laid numerous claims, including ones for negligence and breach of contract. Almost immediately after the complaint was filed, class counsel and T-Mobile began settlement discussions and exchanged discovery documents and information. Following a few days of mediation, and less than a month after class counsel had filed the complaint, the parties agreed to the basic terms of a settlement. They executed a formal settlement agreement the following month that set forth the precise details.

As part of the settlement, T-Mobile agreed to create a $350 million fund from which individual class members could recover up to $25,000 for out-of-pocket losses that they could prove resulted from the data breach, including time spent trying to remedy issues relating to the breach. Those who didn't submit proof of loss could receive $25 (or $100 if a member of the California subclass). Class members could also enroll free of charge in an identity-defense and monitoring service for two years, which class counsel say carries a retail price of $96 per year. And even if they didn't enroll in that service, all class members would receive two years of "restoration services" that gave them access to "fraud resolution specialists who can assist with important tasks" like disputing inaccurate credit reports and placing fraud alerts with credit bureaus. Finally, T-Mobile committed to spend an additional $150 million over two years to improve its data security.

-7-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 7 of 20
Appellate Case: 23-2744     Page: 7     Date Filed: 07/29/2024 Entry ID: 5417876

In seeking preliminary approval of the settlement, class counsel informed the court that they would request no more than 30% of the $350 million settlement fund. The court gave preliminary approval to the settlement and said that the proposed fee award was "reasonable, subject to the Court's review of a timely filed fee application." The court also directed class counsel to send notice of the settlement to class members, which they did, and in that notice they again represented that they would seek up to 30% of the settlement fund in attorneys' fees. The notice also informed class members that if they did not like the settlement, they could object to it or opt out of the class altogether. The district court reported that over two million class members submitted claims and that class counsel expected that those who submitted proof of losses stemming from the data breach would be completely or "nearly completely" reimbursed. After class members were notified of the settlement, class counsel moved for a fee award of 22.5% of the $350 million settlement fund.

Thirteen class members filed objections to the settlement. Cassie Hampe and Connie Pentz were two of those. They each contended that the amount of attorneys' fees sought was too high, but the district court disagreed with them on the merits (more on this later), and it also struck their objections from the record. It appears the court did so in an attempt to deprive them of the ability to appeal the fee award.

A brief explanation is in order. Typically, only parties to a lawsuit can appeal an adverse judgment, but the Supreme Court has held that unnamed class members who can't opt out of a class can appeal a district court's approval of a settlement without first intervening in the suit. *See In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F.3d 913, 916 (8th Cir. 2011) (citing *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002)). There is some question whether the same rule applies in cases involving an opt-out class like the one here, *see Huyer v. Van de Voorde*, 847 F.3d 983, 986 n.3 (8th Cir. 2017), but since the parties proceed on the understanding that it does, we will too. To appeal without intervening, we've said that the unnamed class member must first "file a timely and proper objection with the district court," *see In*

-8-

*re UnitedHealth*, 631 F.3d at 917, and by striking the objections here, the district court appears to have concluded that the objections were not proper and so could not serve as the basis from which Hampe or Pentz, as unnamed class members who haven't intervened, can appeal the court's approval of the settlement. But, as all appear to agree, we do have jurisdiction to consider the antecedent question of whether the district court properly struck their objections. *See Devlin*, 536 U.S. at 9.

The court struck Hampe's objection because it concluded that she didn't make it in good faith. The court noted that Hampe was represented by Robert Clore and Mikell West of the Bandas Law Firm. The firm's principal, Christopher Bandas, is Hampe's brother-in-law. According to class counsel, the Bandas Firm, including Clore and West, "are notorious serial objectors with a long history of pursuing objections to class settlements for improper purposes and personal benefit," and the firm has represented Hampe and her husband in the past. Class counsel maintain that Hampe's objection is part of "the Bandas/Hampe pattern of filing bad faith objections and delaying settlement payments to class members through appeals while seeking to extract a payment for their illicit family enterprise." The court agreed, finding that the Bandas Firm and Hampe are serial objectors and that her objection here was "vexatious," "brought in bad faith," and brought "for the sole purpose of extracting a fee from the settlement fund." The court anchored its authority to strike the objection in Federal Rule of Civil Procedure 12(f), which permits courts to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The court also revoked the pro hac vice admission of Hampe's counsel for the reasons it struck her objection.

As for Pentz, class counsel sought discovery from her because they believed that her objection was submitted at the behest of her son, John Pentz. Class counsel say that John has filed frivolous objections to class-action settlements on behalf of family members before. After the court gave class counsel permission to depose Pentz, they contacted her, but she rebuffed their efforts to secure her attendance at a

-9-

Case 4:21-md-03019-BCW Document 248-1 Filed 07/31/24 Page 9 of 20
Appellate Case: 23-2744 Page: 9 Date Filed: 07/29/2024 Entry ID: 5417876

deposition. So the court struck her objection. In addition to citing Rule 12(f) for authority, the court struck Pentz's objection as a discovery sanction as well.

Hampe and Pentz both maintain on appeal that the court erred in relying on Rule 12(f) to strike their objections. We agree. By its terms, that rule allows a court to strike matters "from a pleading." A class member's objection to a settlement is not a pleading. Rule 7(a) provides a list of items and says "[o]nly these pleadings are allowed." Absent from that list is an objection like the ones Hampe and Pentz filed here. Other courts that have confronted the question have reached the same result. *See, e.g.*, *George v. Davis*, 2015 WL 463114, at *1 (W.D. Ark. Feb. 4, 2015). Rule 12(f) is simply inapplicable.

Class counsel also insist that the court had inherent authority to strike the objections as a sanction for the objectors' misconduct. We do not take issue with that statement as a general matter, *see Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694–95 (8th Cir. 2001), but the question is whether the alleged misconduct here provides a sufficient basis for striking the objections. Although class counsel and the objectors dispute whether the court's findings must be supported by clear and convincing evidence or by a preponderance of the evidence, we need not resolve the dispute because the result for neither objector hinges on the standard of proof.

We begin with Hampe. The district court found that she and her attorneys are serial objectors with a history of raising frivolous objections to class settlements for their own pecuniary gain. But even if this is correct, we can't see how that is relevant in this particular case. "Merely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio Inc.*, 2011 WL 5873383, at *3 (S.D.N.Y. Nov. 22, 2011). There is just no evidence that either Hampe or her attorneys in this case are attempting to extort a payout, have acted vexatiously, have broken any rules, or have acted unethically. No one contends that her objection is

-10-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 10 of 20
Appellate Case: 23-2744   Page: 10   Date Filed: 07/29/2024 Entry ID: 5417876

frivolous. In fact, as we will explain, it is meritorious. And though it's possible that her meritorious objection is delaying execution of the settlement (a matter she vigorously contests), if so, that's par for the course when class members are given an opportunity to object to the terms of a class settlement. "A district judge ought not try to insulate his decisions from appellate review by preventing a person from acquiring a status essential to that review." *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012). So we reverse the ad hominem decision to strike Hampe's objection as well as the decision to revoke the pro hac vice admission of her attorneys.

Pentz's situation is different. For her, the court identified case-specific behavior that it believed was deserving of sanction. According to class counsel, Pentz initially said that she was acting pro se, but she later disclosed that she was indeed represented by an attorney. She nonetheless refused to disclose her attorney's identity even though the class notice that she received required her to do so. She also evaded personal service of a subpoena compelling her to sit for a deposition, and when she spoke to class counsel on the telephone, she advised that she would not sit for a deposition. In short, she repeatedly refused to cooperate with class counsel's efforts to conduct the discovery that the district court ordered. And if she had concerns about sitting for a deposition, she never brought them to the district court's attention, for instance by moving to quash the subpoena or seeking a protective order. Nor did she respond after class counsel moved to strike her objection. She essentially inserted herself into the dispute and then, without explaining why, refused to play by the rules that the district court set. Pentz objects that by subjecting her to a deposition, the district court "unduly encumbered" her due-process right to be heard. We doubt it. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1266–67 (11th Cir. 2021). Regardless, it was incumbent on Pentz to raise this argument in the district court first rather than stand mute. In the circumstances, we cannot fault the court for striking her objection. *See Chambers v. Whirlpool Corp.*, 980 F.3d 645, 671 (9th Cir. 2020).

-11-

Because the court erred in striking Hampe's objection, she is a proper party to challenge the court's award of attorneys' fees. Federal Rule of Civil Procedure 23(h) provides that "the court may award reasonable attorney's fees" in a class action. At this stage of proceedings, moreover, a district court must be vigilant in protecting the rights of absent class members, including the right not to have their recovery reduced by excessive attorneys' fees. *See In re Wireless Tel. Fed. Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005); *see also* Fed. R. Civ. P. 23(e)(2)(C)(iii). We generally review a district court's decisions regarding attorneys' fees in a class-action settlement for an abuse of discretion, though we review legal issues relating to a fee award de novo. *See Keil v. Lopez*, 862 F.3d 685, 700–01 (8th Cir. 2017).

Courts use two main methods when awarding attorneys' fees in this kind of case. *See id.* at 701. One is the "lodestar" method, where the court multiplies the number of hours attorneys worked by their hourly rates to come up with a starting point, which can then be adjusted up or down depending on the circumstances of a case. The second is the percentage method, where the court awards a percentage of the fund that the attorneys helped recover. *See id.* "It is within the discretion of the district court to choose which method to apply." *Id.* We've explained that under either approach courts should proceed to consider a dozen "factors" to help determine whether a fee award is reasonable. *See id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719–20 (5th Cir. 1974)). Considerations particularly relevant in this case are "the time and labor required," "the amount involved and the results obtained," and "awards in similar cases." *See In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 n.7 (8th Cir. 2018). The ultimate question, though, is whether the fee is reasonable because that's the kind of fee Rule 23(h) allows a district court to award.

As already noted, class counsel sought to obtain a percentage of the recovery, asking the court for 22.5% of the $350 million settlement fund, or $78.75 million. Hampe argued below that this amount is excessive, especially since the settlement

-12-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 12 of 20
Appellate Case: 23-2744   Page: 12   Date Filed: 07/29/2024 Entry ID: 5417876

resulted in a so-called "megafund," which she defined as a settlement involving $100 million or more. She asserted that, for megafund settlements, "the economies of scale often reveal a disconnect between recovery and the amount of labor required to achieve it." Many times, she continued, immense recoveries are the product of a class's size rather than counsel's effort, and so attorneys shouldn't receive as high a percentage of the settlement fund in such cases. To Hampe, this was one of those cases. The district court rejected her contention, noting that our court has never required district courts to reduce fee awards because a settlement created a megafund.

On appeal, Hampe maintains that we should require courts to consider "the economies of scale when addressing attorneys' fees awarded in class action settlements exceeding $100 million." The idea that underpins Hampe's suggested method is that there's an "instinct that as funds reach gargantuan proportions, normal fee percentages would generate fees of such a high magnitude that they would provide a windfall to class counsel," *see* 5 William B. Rubenstein, Newberg on Class Actions § 15:81 (6th ed. June 2024 Update), as large recoveries are driven more by class size than attorney effort. In short, the argument runs, "it isn't ten times as hard to try a $100 million case as it [is] a $10 million case." *See, e.g.*, *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 933 (9th Cir. 2020). Some courts, though, including the district court here, note that a megafund approach could create perverse incentives, as "[c]lients generally want to incentivize their counsel to pursue every last settlement dollar, and a declining percentage award operates to the contrary," *see In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797, 801 (7th Cir. 2023), and may encourage counsel to seek "quick settlements at sub-optimal levels." *See Equifax*, 999 F.3d at 1280. There seem to be good arguments on both sides of the debate. On one hand, it doesn't seem reasonable for attorneys to receive a windfall for doing little work; on the other, it doesn't seem reasonable to penalize attorneys for obtaining a quick success.

-13-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 13 of 20
Appellate Case: 23-2744   Page: 13   Date Filed: 07/29/2024 Entry ID: 5417876

It's not altogether clear what Hampe wants us to do. At times it seems she wants us to rule that courts *must* lower the percentage of the settlement fund that attorneys receive in megafund cases. In a typical class action, "courts have frequently awarded attorneys' fees ranging up to 36%." *See Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017). But relying on one particular study, Hampe says that the percentage awarded in a megafund class action is typically 10–12% of the settlement fund. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Stud. 248, 265 (2010). But class counsel point out that other studies paint a different picture; for example, one study found that the typical fee in class-action settlements of this size is 17.8–19.5%. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 839 (2010); *see also Equifax*, 999 F.3d at 1281. And though 22.5% is a bit higher than this range, class counsel note, if one considers that T-Mobile pledged to spend an additional $150 million for data security, they are seeking only about 15.75% of the $500 million that T-Mobile has agreed to pay, which is well below class counsel's preferred range.

In any case, we decline to hold that a court must award a reduced percentage in megafund cases. The determination of a reasonable fee is a wide-ranging inquiry that seeks to account for a variety of case-specific circumstances. One court has rightly cautioned "against overly formulaic approaches in assessing and determining the amounts and reasonableness of attorneys' fees." *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005). This does not mean that a court in a particular case must ignore the empirical reality that the percentage of fee awards tend to decrease as the size of a settlement fund increases, perhaps because of the potential that attorneys might receive an undeserved windfall. *See* 5 William B. Rubenstein, Newberg on Class Actions § 15:81 (6th ed. June 2024 Update). Objectors are free to argue, and district courts are free to accept the argument, that a recovery in a particular case stemmed more from class size than attorney effort and so might merit a lower fee award. But we think a per se rule requiring a percentage reduction in

-14-

every megafund case would introduce arbitrary and formulaic rules into an inquiry that needs to be anything but. So we reject Hampe's call for courts to resort to a hammer where a scalpel is more appropriate.

Sometimes in her brief, though, it appears that Hampe is seeking something more modest, namely, that we simply instruct district courts to consider that megafund cases might warrant a lower percentage fee award. But we don't think that's necessary given that the existing criteria for determining fee awards already give courts ample room to consider the potential economies of scale that a large class action entails. For example, courts are to consider "the time and labor required," "the amount involved and the results obtained," and "awards in similar cases," among other matters. Those considerations already tune courts' attention to the circumstances that megafund-method advocates want courts to consider, such as the work attorneys have performed, the size of the award and the class, the amount attorneys have received in similar cases, and whether attorney effort contributed to the award and is deserving of additional fees. Other circuits have made the same observation. *See, e.g.*, *Equifax*, 999 F.3d at 1280; *Rite Aid*, 396 F.3d at 303. The district court here explained these considerations in detail, and it's clear that it already had in mind the size of the class, the results achieved, and the work of counsel when it fixed the amount of the fee award.

So we don't discern any missteps in the court's overall methodology for determining attorneys' fees.

Methodology to one side, Hampe also maintains that the award here was excessive. The district court very carefully examined the relevant criteria. It concluded, for example, that class counsel, who were all highly skilled, had obtained "extraordinary" relief for class members quickly and with few objections, had faced considerable litigation risk given the difficulties of data-breach cases and the defenses that T-Mobile might assert, and had requested fees in line with those other counsel

-15-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 15 of 20
Appellate Case: 23-2744   Page: 15   Date Filed: 07/29/2024 Entry ID: 5417876

had received in similar cases. The court compared the fee request here with the fees counsel received in *Equifax*, another large data-breach case that involved similar figures. In that case, the Eleventh Circuit affirmed a fee award of $77.5 million, which was about 20.36% of the initial $380.5 million settlement fund that was created. *See Equifax*, 999 F.3d at 1281. The class in *Equifax* was also nearly twice as large as the one here, *see id.* at 1257, which is a point that the district court emphasized.

The district court also held that a "lodestar crosscheck" confirmed that the fee award was reasonable. A lodestar crosscheck helps a court evaluate whether a percentage award would result in a windfall by comparing it to counsels' lodestar. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). Class counsel reported spending more than eight thousand hours on the case and anticipated spending another three thousand hours over the next few years as the settlement was administered, which amounted to a lodestar of about $8.17 million when those hours are multiplied by counsels' typical hourly rates. That resulted in a lodestar "multiplier" of 9.6, meaning that counsel would get paid about 9.6 times their customary hourly rates. According to the district court, courts often approve awards with similar multipliers, and it cited a handful of cases in support of that observation.

We believe that the district court abused its discretion by awarding an unreasonable fee. Though our court has never held that a particular multiplier is always unreasonable, we have recognized that an award with a multiplier of 5.3 is "high." *See Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). Class counsel in this case nonetheless sought an award with a multiplier nearly twice as high, assuming that projected future hours of work are considered in the lodestar calculation. Without including those projected future hours, the multiplier was nearly three times as high. Class counsel worked on the case for just a matter of months, conducted relatively little discovery, and engaged in no substantial motions practice, save for responding to a motion to remand. That's not to intimate in any way that class

-16-

counsel didn't do a good job; in fact, they appear to have represented the class well, and they obtained a significant result. We simply note that the case had barely gotten off the ground before it settled, and counsel hadn't yet invested the time and effort to yield a return like the one the court awarded.

Class counsel echo a concern the district court adverted to—that by reducing their award in light of the lodestar crosscheck, the court is essentially "penaliz[ing] counsel for obtaining remarkable relief quickly." We disagree. Class counsel could make the same argument in a case involving a multiplier of 100 or in a case involving only a day or two of work. The assertion contains no limiting principle. If we permitted the fee award here to stand, it would mean that counsel could make $7,000 to $9,500 an hour, which we think no reasonable class member would willingly pay to an attorney to help resolve this claim, especially when, as here, dozens of other attorneys were offering their assistance. Reducing the fee award to, say, half of what was requested (resulting in fees of $3,500 to $4,750 per hour) could hardly be considered a penalty.

The decision in *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003), makes for a useful comparison. In that class action, the parties litigated for nearly seven years until they settled on the eve of trial. *See id.* at 507–08. During that time, "there were almost 400 depositions of witnesses, including 21 experts who issued 54 expert reports; four rounds of class certification briefing (through the Supreme Court); 16 summary judgment motions, 31 motions *in limine*, and three *Daubert* motions; and a pretrial order identifying 230,000 pages of trial exhibits, 730 trial witnesses, and more than 17,000 deposition designations." *See id.* at 523. Attorneys sought more than $609 million in fees, which was about 18% of the settlement's compensatory relief and was 9.68 times the attorneys' lodestar figure—a multiplier quite similar to the one in our case. *See id.* at 522.

-17-

Despite the work counsel expended and the significant sum they obtained, the court held that their "request to be paid almost 10 times their hourly rate is absurd." *See id.* So it instead awarded them about $220 million, representing a multiplier of about 3.5, which it thought was reasonable given that counsel had risked several years on a case that would yield them nothing had they lost at trial. *See id.* at 524–25. The court rejected the contention that reducing the award would punish the attorneys, explaining that "[o]nly in comparison to the amount sought can [the award] be considered anything but generous," and if that award "amounts to punishment, I am confident there will be many attempts to self-inflict similar punishment in future cases." *See id.* The Second Circuit agreed and upheld the award. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121–23 (2d Cir. 2005).

Class counsel here did only a fraction of the work as those in *Visa* and risked wasting only a fraction of the time and effort that was spent there. Yet they were awarded rates of pay far above their normal ones. We understand that *Visa* comes from a different circuit and that it involved very different claims, but we nonetheless find a comparison of its circumstances to the ones we confront here instructive. And it only confirms our view that the district court awarded class counsel an unreasonable fee.

Class counsel also point out that a lodestar crosscheck isn't required under our precedent. *See, e.g., Keil*, 862 F.3d at 701 (citing *Petrovic*, 200 F.3d at 1157). That may be so. But we've not held that a crosscheck is always unwarranted; in fact, we said in *Petrovic* that a crosscheck "is sometimes warranted to double-check the result of the 'percentage of the fund' method." *See Petrovic*, 200 F.3d at 1157. One of the circumstances in which a crosscheck might be helpful is when a megafund case settles quickly given the potential for a windfall. *See* 5 William B. Rubenstein, Newberg on Class Actions § 15:81 (6th ed. June 2024 Update). Whether required or not, though, the district court performed the crosscheck, and we think that it revealed

-18-

that class counsel have received a windfall. We aren't obligated to close our eyes to a crosscheck that the court performed even if it didn't have to.

We also aren't convinced by the cases the court cited in support of its award. The cases all come from outside our circuit and appear to be outliers. As for the court's comparison to *Equifax*, that case involved more litigation and took longer to settle. *See Equifax*, 999 F.3d at 1257–58. There, counsels' lodestar approached $30 million. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020). Here, again, it was just over $8 million. The multiplier there was about 2.62. *See id.* Here, again, 9.6. The parties can debate whether the result obtained in *Equifax* is as good as the one obtained here, but it's beyond debate that the attorneys in *Equifax* worked longer and risked losing more hours to an adverse result. So we think *Equifax* offers only limited support for the court's award.

Finally, we recognize that lodestar multipliers (and therefore attorney rates of pay) tend to decrease as the life of a case proceeds and attorneys devote more hours to a case. The district court expressed concern that lowering fee percentages might "encourage class counsel to pursue quick settlements at sub-optimal levels." While that could be true, it could also be true that awarding counsel ten times their hourly rates in the early stages of a case might encourage them to settle quickly at sub-optimal levels so they can turn their attention to the next promising case on the horizon before diminishing marginal returns to their labor kick in. Rational, self-interested attorneys would probably prefer to spend a year's work settling five actions at ten times their typical hourly rates than litigating one action at twice their hourly rate. So even if preventing quick settlements at sub-optimal levels was the court's aim, we aren't sure the award it gave achieved it. For all the reasons adverted to, we hold that the court abused its discretion in awarding this fee in the circumstances.

-19-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 19 of 20
Appellate Case: 23-2744     Page: 19     Date Filed: 07/29/2024 Entry ID: 5417876

To summarize, we affirm the court's decision to strike Pentz's objection, but we reverse its decision to strike Hampe's objection and revoke the pro hac vice admission of her attorneys. We also reverse its award of attorneys' fees and remand for further proceedings consistent with this opinion. Finally, we deny the parties' motions to supplement the record as moot.

_____

-20-

Case 4:21-md-03019-BCW   Document 248-1   Filed 07/31/24   Page 20 of 20
Appellate Case: 23-2744   Page: 20   Date Filed: 07/29/2024 Entry ID: 5417876