# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| IN RE: T-MOBILE CUSTOMER DATA ) <br> SECURITY BREACH LITIGATION ) <br> ) <br> ) <br> ) <br> ) | MDL No. 3019 <br><br> Master Case No. 4:21-md-03019-BCW |

## PLAINTIFFS' AMENDED MOTION AND SUGGESTIONS IN SUPPORT OF AMENDED MOTION FOR ATTORNEYS' FEES

This matter was returned to the Court on remand following the Eighth Circuit's opinion reversing the award of attorneys' fees. On appeal, the Eighth Circuit narrowly concluded that the initial fee award was too large, citing the "lodestar crosscheck" as producing a multiplier above nine. The Eighth Circuit notably did not take issue with the award as a percentage of the fund, whether 22.5% of the $350 million cash settlement or 15.75% of T-Mobile's total commitment. It also rejected arguments that, because $350 million purportedly qualifies as a "megafund," the Court was obligated to award fees using a declining or reduced fee percentage. Nor did it take issue with any of the *Johnson* factor findings made by the Court supporting the initial award, including that the Settlement was "extraordinary," achieved efficiently, and for the benefit of the Settlement Class. In reversing, the Eighth Circuit made clear that it had not established a strict limit on permissible multipliers under a lodestar crosscheck. Thus, the narrow issue on remand is what lodestar multiplier below nine would produce a reasonable fee, based on a percentage of the fund, that avoids an unearned windfall to Class Counsel.

To avoid further delay in implementation of this Settlement, Class Counsel have reduced their fee request to an amount that would produce a multiplier of 5.6, which is a multiplier the

1

Eighth Circuit has previously approved of. Although the case-specific facts would support a greater multiplier here, Class Counsel amend their initial fee request to seek a fee that is equal to their previously accepted lodestar with the 5.6 multiplier.[1]

## PROCEDURAL HISTORY

This class action involved a data breach that affected approximately 76 million T-Mobile customers. Doc. 235 at 2. The parties agreed to a Settlement, which produced a $350 million cash Settlement fund and required T-Mobile to spend an additional $150 million in security equating to a Settlement total of $500 million in data security and remuneration ("Settlement"). Doc. 158 at 1. On June 28, 2023, the Court granted final approval to the Settlement, finding that it "provides extraordinary relief to the Settlement Class Members." Doc. 235 at 6, 17.

Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel applied for an award of attorneys' fees equal to 22.5% of the $350 million cash fund or 15.75% of T-Mobile's $500 million total cash commitment. Doc. 179.[2] The Court received a handful of objections to the Settlement and to the application for attorney's fees, including objections by Settlement Class Members Cassie Hampe ("Hampe") and Connie Pentz ("Pentz"). After briefing and a hearing, the Court struck the objections filed by Hampe and Pentz, overruled their objections on the merits, and granted the application for attorneys' fees in the amount requested by Class Counsel. *See* Docs. 233, 234, 235.

---

[1] A copy of this motion and supporting suggestions is being publicly posted on the Settlement website contemporaneous with this filing, along with a notice that pursuant to this Court's local rules, any opposition must be filed or received by the Claims Administrator within 14 days. *See* W.D.Mo. L.R. 7(c)(2).

[2] Class Counsel also moved for reimbursement of their expenses and for service awards to the named plaintiffs. The Court granted those requests, which were not appealed, and are therefore final and not before the Court on remand. *See* Doc. 235 at 47-48.

Following entry of final judgment, Hampe and Pentz filed notices of appeal. Docs. 237, 240. On July 29, 2024, the Eighth Circuit affirmed in part and reversed in part the judgment related to the award of attorneys' fees. *See In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849 (8th Cir. 2024) ("*In re T-Mobile*"). It affirmed the order striking Pentz's objection. *Id.* It reversed the order striking Hampe's objection and the award of attorneys' fees and remanded for further proceedings consistent with its opinion. *Id*. Mandate issued on August 23, 2024.

## ARGUMENT

Class Counsel now seek to amend their initial motion and for an entry of an order awarding attorneys' fees consistent with the Eighth Circuit's instructions.

On appeal, the Eighth Circuit rejected the principal argument raised by Hampe, which was that the size of this Settlement constituted a "megafund" and the "court must award a reduced percentage in [such] cases." *Id.* at 860. "[W]e think a per se rule requiring a percentage reduction in every megafund case would introduce arbitrary and formulaic rules into an inquiry that needs to be anything but. So we reject Hampe's call for courts to resort to a hammer where a scalpel is more appropriate." *Id.*

Instead, the Eighth Circuit reaffirmed that a district court should "proceed to consider a dozen 'factors' to help determine whether a fee is reasonable," including "the time and labor required," "the amount involved and the results obtained," and "awards in similar cases." *Id.* at 585-59 (citing *Johnson v. Ga. Highway Express Inc.*, 488 F.2d 714, 719-20 (5th Cir. 1974)). The "determination of a reasonable fee is [therefore] a wide-ranging inquiry that seeks to account for a variety of case-specific circumstances." *Id*. at 860. And it agreed that the Court "here explained these considerations in detail, and it's clear that [the Court] already had in mind the size of the class, the results achieved, and the work of counsel when it fixed the amount of the fee award." *Id.*

3

Thus, the Eighth Circuit did not "discern any missteps in the [C]ourt's overall methodology for determining attorneys' fees." *Id*.

Nor did the Eighth Circuit find any fault in the Court's detailed consideration of the *Johnson* factors themselves. Rather, the Eighth Circuit cited the Court's overall analysis approvingly, characterizing the Court's work as a "careful[] examination [of] the relevant criteria:"

> The district court very carefully examined the relevant criteria. It concluded, for example, that class counsel, who were all highly skilled, had obtained "extraordinary" relief for class members quickly and with few objections, had faced considerable litigation risk given the difficulties of data-breach cases and the defenses that T-Mobile might assert, and had requested fees in line with those other counsel had received in similar cases.

*Id.* at 860-61.

Although the Eighth Circuit reversed the fee award, it held only that the award was too great based on the "lodestar crosscheck," given that it produced a multiplier of 9.6. *Id.* at 861-62. The Eighth Circuit noted that this did not suggest "in any way that class counsel didn't do a good job; in fact, they appear to have represented the class well, and they obtained a significant result." *Id.* at 16-17. But the lodestar did not support "a return like the one the court awarded." *Id.* at 861.

On remand, the path forward is relatively simple. Given that the Court applied the correct methodology in its prior award, and the Eighth Circuit did not find fault with any of its findings regarding the *Johnson* factors, the only task that remains is to adjust the fee award to produce a multiplier within the range of reasonableness. As noted, the Eighth Circuit "has never held that a particular multiplier is always unreasonable" and has affirmed a fee award "with a multiplier of 5.3." *Id.* (citing *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019)).

In *Rawa*, the Circuit quoted approvingly another case "finding reasonable a 5.61 crosscheck multiplier" noting that "[t]o overly emphasize the amount of hours spent on a contingency fee case . . . would distort the value of the attorneys' services." *Rawa*, 934 F.3d at 870 (quoting *In*

4

*re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-cv-1186-CAS, 2005 WL 4045741, at *18 (E.D. Mo. Jun. 30, 2005). Here, the *Johnson* factors, including the "extraordinary" result obtained and the skill Class Counsel exhibited in achieving it would continue to justify a multiplier above 5.6. Nonetheless, to allow the Settlement Class Members to receive the important benefits made available under the Settlement without further delay, Class Counsel do not seek the highest multiplier to which they might be entitled. Instead, using their previously accepted lodestar of $8,173,534,[3] which the Eighth Circuit did not question, and a multiplier of 5.6, they seek a reduced fee award equal to $45,771,790.40.

Importantly, in addition to being directly supported by *Rawa*, a 5.6 multiplier is also consistent with—indeed, lower than—multipliers awarded in similarly large cases, including in the Eighth Circuit. *See, e.g., In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009) (6.5 multiplier on a $925.5 million fund). A 5.6 multiplier is equal to or lower than the multipliers awarded in at least a dozen similarly large settlements, including in two cases affirmed by two different Courts of Appeals.[4]

---

[3] Although Class Counsel have expended additional time and labor on behalf of the Settlement Class since final approval, which will likely lead to a higher lodestar than previously estimated, in order to expedite the delivery of Settlement benefits as quickly as possible, they are not filing a new motion for attorneys' fees and are merely relying on their previously approved lodestar and modifying the amount previously sought downward.

[4] *See also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 183 (3d Cir. 2005) (affirming fee award on $4.2 billion fund that produced a multiplier in the "mid-single digits"); *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (6.85 multiplier on $65 million fund); *accord Santos v. Camacho*, CIV. 04-00006, 2008 WL 8602098, at *39 (D. Guam Apr. 23, 2008) (8 multiplier on $90 million fund), *aff'd sub nom. Simpao v. Gov't of Guam*, 369 Fed. Appx. 837 (9th Cir. 2010); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, CIV.A. 05-11148PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (8.3 multiplier on $350 million fund); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (8.9 multiplier on a $165 million fund); *In re Rite Aid Corp. Sec. Litig.,* 362 F. Supp.2d 587 (E.D. Pa. 2005) (6.96 multiplier on a $126.6 million fund); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) (4.5 to 8.5 multiplier "unquestionably reasonable" on $193 million fund); *Nieman v. Duke Energy Corp.*, 312CV00456MOCDSC, 2015 WL 13609363, at *1 (W.D.N.C. Nov. 2, 2015) (6.43 multiplier on $146.25 fund); *In re Credit Default*

Furthermore, the reason the multiplier here falls on the higher side—the fund size is significant and the case was prosecuted efficiently and settled early—are among the reasons that courts find higher multipliers justifiable in conducting a lodestar crosscheck. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (collecting cases, and holding that while a 6.3 multiplier is "near the higher end of the range of multipliers that courts have allowed" it was justified for "an early settlement, particular where, as here, the settlement amount is substantial"); *In re Enron*, 586 F. Supp. 2d at 803 (5.2 multiplier "reasonable for this efficiently prosecuted case"); *In re Rite Aid*, 362 F. Supp. 2d at 587 (E.D. Penn. 2005) (6.69 multiplier on 25% fee award reasonable for "historic recovery"); *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d at 768 ("[g]iven the outstanding settlement in this case and the noticeable skill of counsel, a lodestar multiplier greater than the average would not be unwarranted or unprecedented" as "the lodestar cross check is but one of several factors it must consider [and] should not unilaterally control," awarding 18% of the fund and a multiplier of 6).

Moreover, the Eighth Circuit's concern with the 9.6 multiplier is not implicated by a 5.6 multiplier. The Circuit "recognize[d] that lodestar multipliers . . . tend to decrease as the life of a case proceeds," *In re T-Mobile*, 111 F.4th at 862, which means that early settlements more often produce larger multipliers. The concern with high multipliers, however, is that "in the early stages

---

*Swaps Antitrust Litig.,* No. 1:13-md-02476, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (6.2 multiplier on a $1.86 billion fund); *In re Cardinal Health Inc. Sec. Litig.,* 528 F. Supp. 2d 752, 767-68 (S.D. Ohio 2007) (6 multiplier on a $600 million fund); *Athale v. Sinotech Energy Ltd.*, 11 CIV. 05831 (AJN), 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (5.65 multiplier on a $20 million fund); *In re Charter,* 2005 WL 4045741 (5.6 multiplier on a $146.2 million fund); *Roberts v. Texaco*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (5.5 multiplier on a $115 million fund); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F. Supp. 2d 732, 791 (S.D. Tex. 2008) (5.21 multiplier on a $7.22 billion fund);

 *See also* Doc. 179 at 27-28 (collecting cases with even higher multipliers); *Perez v. Rash Curtis & Associates*, 4:16-CV-03396-YGR, 2020 WL 1904533, at *21 (N.D. Cal. Apr. 17, 2020) (finding higher multipliers reasonable, including using future estimated hours).

of a case [the temptation of a large multiplier] might encourage [class counsel] to settle quickly at sub-optimal level so they can turn their attention to the next promising case[.]" *Id*. The case-specific record here refutes that Class Counsel acted on any such incentive in this case.

The Court already concluded that this was a risky case, in which Class Counsel invested significant labor, and produced an early—but "extraordinary"—outcome for their clients, as the Eighth Circuit acknowledged. This was not a "suboptimal" Settlement, despite its early achievement. So, on the "case-specific circumstances" here, *id.* at 860, a 5.6 multiplier is not unreasonable because it did not, in fact, incentivize Class Counsel to agree to a suboptimal Settlement.

In its prior order, which the Eighth Circuit did not find erroneous, the Court noted that the per capita recovery under this Settlement is twice what victims received in the $380 million cash portion of the *Equifax* data breach settlement. Doc. 235 at 30. It is three times the per capita value of the *Anthem* data breach settlement. *Id*. at 30. And it is more than five times what was recovered for victims of the *Yahoo*! data breach. *See In re Yahoo! Inc. Customer Data Security Breach Litig.*, Case No. 16-MD-02752-LHK, 2020 WL 4212811, at *33–34 (N.D. Cal. July 22, 2020) ($117.5 million settlement for 194 million class members). These settlements may have required more labor to achieve—and therefore produced lower multipliers—but the result for the Settlement Class here is objectively superior.

Finally, the reasonableness of the 5.6 multiplier is evidenced by the reduced percentage of the fund that this fee request produces, including as compared to "awards in similar cases." *Id*. at 860. The reduced fee request is 13.08% of the $350 million cash fund. The percentages of the cash fund awarded in *Equifax*, *Capital One, Yahoo!, and Anthem* ranged from 19.4% to 28%. Doc. 235 at 36 n.5. A fee equal to 13.08% of the cash fund is significantly lower than the percentages

7

awarded in any of those inferior settlements, which adequately reflects that less labor was required here. Moreover, the percentages requested here are below: the mean award in class actions generally according to numerous academic studies, the percentage awarded in more than 75% of class actions in the Eighth Circuit, and the mean and median fee percentages awarded in settlements between $250 and $500 million. *See* Declaration of Prof. Brian Fitzpatrick, Doc. 179-2 at ¶¶ 18 (citing studies), ¶¶ 17-19 (finding that three-fourths of percentages awarded in the Eighth Circuit are *above* 15.75%), ¶ 20 (citing study show mean and median awards in this range were 17.8% and 19.5% respectively). In short, the reduced request is reasonable by any metric.

A multiplier of 5.6 strikes an appropriate balance between rewarding Class Counsel for achieving an extraordinary outcome that surpasses all similar cases, avoiding a windfall based on the amount of labor they expended, and encouraging other attorneys to negotiate for the best results for their clients.

## **CONCLUSION**

For these reasons, Plaintiffs seek to amend their previous Motion and seek a reduced attorneys' fee award equal to $45,771,790.40.

8

September 10, 2024

*/s/ Norman E. Siegel*
Norman E. Siegel, MO #44378
STUEVE SIEGEL HANSON LLP
460 Nichols Rd., Ste. 200
Kansas City, MO 64112
siegel@stuevesiegel.com

Cari Campen Laufenberg (*pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
claufenberg@kellerrohrback.com

James J. Pizzirusso (*pro hac vice*)
HAUSFELD LLP
888 16th St. NW, Ste. 300
Washington, DC 20006
jpizzirusso@hausfeld.com

*Co-Lead Class Counsel*
