# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: T-MOBILE CUSTOMER DATA | ) | MDL No. 3019 |
| SECURITY BREACH LITIGATION | ) | |
| | ) | Master Case No. 4:21-md-03019 |
| | ) | |
| | ) | |
| | ) | |

## NOTICE OF FRAUD UPON THE COURT
## AND MOTION TO COMPEL SETTLEMENT ADMINISTRATOR TO ACKNOWLEDGE AND PROCESS SETTLEMENT CLAIM

NOW COMES Plaintiff, Grace Amaya, appearing pro se, and respectfully requests this Court to compel the Settlement Administrator (Kroll Settlement Services) to process Plaintiff's validly submitted claim for $25,000 in the T-Mobile Data Breach Class Action Settlement and to grant immediate relief due to fraud upon the court. Plaintiff submits this motion as a formal notice of fraud, alleging that Administrator's arbitrary exclusion of her claim, disparate treatment, and lack of appeal process undermine the settlement's integrity, rendering any denial or reduction of her claim moot.  Pursuant to _Haines v. Kerner, 404 U.S. 519 (1972),_ Plaintiff requests liberal construction of this motion.

## I. INTRODUCTION

Plaintiff, a class member eligible for compensation under the T-Mobile Data Breach Class Action Settlement, attempted to submit a timely claim on or before January 23, 2023, via their web site but was thwarted by technical malfunctions. Plaintiff reported these issues to Kroll, as did her two sons (also class members), but while her sons received responses and claim extensions, Plaintiff was ignored thereby denying her due process. Plaintiff's $25,000 claim, based on _out of pocket, other losses - documented losses under FAQS 7_ at settlement web site, was further mishandled through Kroll's unresponsiveness, denying appeal rights and bias against self-employed individuals. This misconduct constitutes fraud upon the court, under _Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944),_ voiding Kroll's actions and warranting immediate approval of Plaintiff's full claim.

## II. FACTUAL BACKGROUND

1. ELIGIBILITY AND NOTIFICATION: Plaintiff received direct notice from T-Mobile via text, including a Class Member ID, confirming her eligibility.

2. FAILED CLAIM SUBMISSION: On or before January 23, 2023, Plaintiff and her sons attempted to submit claims via www.t-mobilesettlement.com but encountered technical issues preventing submission.

3. IMMEDIATE REPORTING: On the same day, Plaintiff and her sons emailed info@t-mobilesettlement.com to report the issues (EXHIBIT 1).

4. DISPARATE TREATMENT: On January 24, 2023, Plaintiff's sons received responses from Kroll with Unique Class Member IDs and an extended deadline of January 30, 2023, to re-submit claims (EXHIBIT 2). Plaintiff received no response or ID, barring re-submission.

5. ALTERNATIVE SUBMISSION: Plaintiff completed an online form from the settlement website after no response received by email and sent it by certified mail days after the failed attempt in January of 2023.

6. CERTIFIED MAIL TO ASSERT RIGHTS: On March 20, 2025, Plaintiff sent a letter (EXHIBIT 4) by certified mail (EXHIBIT 5) to the Settlement Administrator and Class Counsel, detailing lack of details on her claim and April payouts scheduled.

7. UNRESPONSIVENESS: Plaintiff's multiple emails (EXHIBIT 3) and phone calls to Kroll went unanswered until April 2, 2025, when three agents struggled to locate her claim and provided inconsistent answers (FUTURE EXHIBIT, recorded calls). Agent Nicole attributed the issue to the Omega Team, promising follow-up after speaking to Class Counsel.

8. CLASS COUNSEL CONTACT: On April 5, 2025, Max Gotto (Keller Rohrback paralegal) apologized, stating Plaintiff's claim was approved "in significant part" but limited to 15 hours at $25/hour due to missing payroll documentation (FUTURE EXHIBIT, recorded call). Max Gotto stated that a deficiency notice was sent to an alternate email address in August 2023, but Plaintiff never received it at that address or at the email used to correspond with the Settlement Administrator, (See EXHIBIT 3 – email correspondence history) and no proof of delivery was provided that it was sent. Max acknowledged Plaintiff's evidence (EXHIBITS 6–10) but could not guarantee review and repeatedly stated Settlement Administrator is sole decision maker.

9. LACK OF PROOF OF DEFICIENY NOTICE:
Plaintiff notes that neither Kroll nor Class Counsel has produced any actual copy of the alleged deficiency notice they claim to have sent in August 2023. No proof of sending, such as email delivery confirmation or USPS tracking, has been provided. Moreover, the alleged notice was not sent to Plaintiff's verified email address used for settlement communications, as documented in Plaintiff's correspondence history (See EXHIBIT 3).

10. EXPLANATION OF TIMING: Plaintiff relied on her timely certified mail submission and the absence of any deficiency notice, reasonably believing her $25,000 claim had been properly received. Plaintiff and her sons periodically monitored www.t-mobilesettlement.com, noting in March 2025 an update that payments would begin in April 2025. Plaintiff attempted to contact Kroll Settlement Services by phone but was

unable to reach a representative to confirm amount that would be sent and any other details. Upon realizing no confirmation had been received, Plaintiff promptly contacted Class Counsel and the Settlement Administrator (EXHIBITS 4 & 5) to assert her rights, with any delay attributable solely to Kroll's failure to provide timely communication.

11. FINAL COMMUNICATION: Plaintiff's clarifying email with case law to class counsel, (EXHIBIT 11) was also sent to settlement administrator with an automated "no-reply" response (EXHIBIT 12). Kroll's agent, Nicole later claimed this was a response from manager Drew, lacking appeal rights.

12. MISSED DISPUTE DEADLINE: The settlement website *FAQS 23* allowed disputes until November 21, 2024, but Plaintiff received no claim determination or deficiency notice, denying her this right.

## III. CLAIM DETAILS

Plaintiff, a marketing consultant charging $350/hour, spent minimum of 85 hours mitigating damage from the T-Mobile data breach, which allowed hackers to send fraudulent emails to her contacts, harming her reputation and business. She incurred $2,750 for cybersecurity services. Her $25,000 claim, based on lost income (85 hours at $350/hour) and out-of-pocket costs, is supported by a sworn affidavit (EXHIBIT 6), invoice (EXHIBIT 7), proposal (EXHIBIT 8), bank statement (EXHIBIT 9), and business record (EXHIBIT 10). Her $350/hour rate aligns with industry standards, client agreements, and case law (*Perdue v. Kenny A., 559 U.S. 542 (2010)*; *Missouri v. Jenkins, 491 U.S. 274 (1989)*), which require compensation at market rates for non-traditional work.

## IV. LEGAL ARGUMENT AND NOTICE OF FRAUD UPON THE COURT

Kroll's failure to process Plaintiff's claim, despite acknowledging identical claims from her sons, constitutes fraud upon the court, voiding any denial or reduction of her $25,000 claim and necessitating immediate relief.

13. FRAUD UPON THE COURT: While this motion asserts fraud upon the court due to systemic mismanagement undermining the court-approved settlement, Plaintiff also alleges broader administrative fraud and misconduct by the Settlement Administrator. Kroll's disparate treatment, unresponsiveness, automated final response without appeal rights, and failure to provide a dispute opportunity by November 20, 2024, meet this standard. *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)*, allows judicial intervention to correct misconduct undermining a settlement. *Chambers v. NASCO, Inc., 501 U.S. 32 (1991)*, affirms the court's power to sanction such misconduct, rendering Kroll's actions moot and Plaintiff's claim approval mandatory.

14. DUE PROCESS VIOLATION: *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)*, guarantees class members notice and participation. Kroll's failure to respond, provide a Unique Class Member ID, or notify Plaintiff of her claim status and

deficiencies violated this right, breaching the settlement agreement. Without proof of timely delivery to the correct address, any claim of notice must be deemed invalid under the settlement's due process obligations (*see Mullane, 339 U.S. at 314, requiring meaningful and verifiable notice*). As such, any post-deadline denial of Plaintiff's claim based on alleged but unproven deficiency notice is procedurally void.

15. MISSED DISPUTE DEADLINE: Plaintiff was not given notice of her claim determination—written or electronic—and therefore could not exercise her right to dispute under the settlement's own stated November 20, 2024 deadline. The absence of notice voids any presumption of waiver and requires immediate corrective relief. Any denial or reduction issued without proper notice and after that deadline is procedurally void and should be set aside. See *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)*; *Chambers v. NASCO, Inc., 501 U.S. 32 (1991)*

16. LACK OF GOOD FAITH: *In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124 (2d Cir. 2001)*, requires uniform, good-faith administration. Kroll's preferential treatment of Plaintiff's sons and bias against self-employed individuals (limiting Plaintiff to $25/hour without payroll stubs) demonstrate arbitrary handling.

17. SELF-EMPLOYED DISCRIMINATION: *Chao v. Gotham Registry, Inc., 514 F.3d 280 (2d Cir. 2008)*, *Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28 (1961)*, and *Carter v. Dutchess Cmty. Coll., 735 F.2d 8 (2d Cir. 1984)*, protect self-employed individuals from discriminatory documentation standards. Kroll's rejection of Plaintiff's evidence (EXHIBITS 6–10) violates these principles.

18. CLASS COUNSEL FIDUCIARY DUTY & NEED FOR COURT INTERVENTION: Class Counsel owes a fiduciary duty to all class members to ensure fair and adequate protection of their interests under *Federal Rule of Civil Procedure 23(a)(4)*. *See Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997); In re Agent Orange Prod. Liability Litig., 818 F.2d 145, 165 (2d Cir. 1987)*. By failing to act upon clear evidence of mishandling and by abdicating their supervisory role, Class Counsel breached their fiduciary duty, further necessitating this Court's intervention to protect Plaintiff's rights and ensure the integrity of the settlement process.

19. PRO SE LIBERAL COMPLAINT: *Haines v. Kerner, 404 U.S. 519 (1972)*, mandates liberal interpretation of Plaintiff's claims to prevent denial of substantive rights due to procedural issues.

20. PRESERVATION OF RIGHTS: Plaintiff preserves her rights to pursue further remedies for due process violations, discriminatory administration and other violations. Evidence, including recorded calls, screenshots, and tracking data, is available upon request.

## V. JURISDICTION AND PROCEDURAL BASIS FOR RELIEF

21. Plaintiff further requests that the Court retain jurisdiction to enforce the fair administration of this settlement and ensure Plaintiff is not prejudiced by administrative delay, error, or discriminatory documentation practices.

22. This motion is filed under *Fed. R. Civ. P. 23(e)*, which grants the Court continuing jurisdiction to ensure that class action settlements are administered fairly, uniformly, and consistent with due process.

23. In the alternative, Plaintiff seeks relief under *Fed. R. Civ. P. 60(b)(3) and 60(b)(6)* for fraud, misrepresentation, and exceptional circumstances justifying correction of the settlement's execution or enforcement.

24. Plaintiff never received a claim determination prior to the published November 20, 2024 deadline to dispute a reduction or denial, as required by the settlement's FAQ. This violates her procedural rights under the settlement and under *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)*.

25. Any post-deadline decision made without advance notice and the ability to respond must be deemed procedurally void.

26. All documentation submitted by Plaintiff meets the "reasonable documentation" requirement defined in *FAQ 7*, and exceeds the minimal standards used to evaluate other claims.

27. Accordingly, this motion is timely, appropriate, and necessary to preserve Plaintiff's participation and enforce the settlement's own administrative protections.

## VI. CONCLUSION

28. Plaintiff respectfully reserves the right to submit a supplemental memorandum in further support of this motion should the Settlement Administrator or Class Counsel present objections requiring additional clarification of timeliness, jurisdiction, or class administration standards.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Declare Kroll's failure to process Plaintiff's claim as fraud upon the court, rendering any denial or reduction moot.

2. Order immediate approval and payment of Plaintiff's full $25,000 claim per FAQ 7 and supporting evidence.

3. Direct Kroll to provide a written acknowledgment of Plaintiff's claim within five (5) days.

4. Investigate systemic fraud or mismanagement in the settlement administration.

5. Retain jurisdiction to ensure fair administration and prevent further prejudice.

6. In the alternative, if the Court does not grant immediate relief based on the record, Plaintiff respectfully requests an evidentiary hearing to present additional evidence and argument.

7. Grant any other relief deemed just and proper.

Respectfully submitted,

Grace Amaya                  Dated: 04/17/2025

Grace Amaya
6924 N Lincolnshire Cir
Milwaukee, WI 53223
(414)416-0879

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: T-MOBILE CUSTOMER DATA | ) | MDL No. 3019 |
| SECURITY BREACH LITIGATION | ) | |
| | ) | Master Case No. 4:21-md-03019 |

### CERTIFICATE OF SERVICE

I, Grace Amaya, hereby certify that on the date below, I served the attached **Motion to Compel Correction of Settlement Claim and Notice of Fraud Upon the Court** and all supporting materials, including exhibits, by placing true and correct copies in the United States mail, with proper first-class postage affixed, addressed as follows:

| | |
|---|---|
| Scott Fenwick & Jeanne C. Finegan | Norman Siegel & Bradley Wilders |
| Kroll Settlement Administration | Stueve Siegel Hanson LLP |
| One World Trade Center, 31st Floor | 460 Nichols Road, Suite 200 |
| New York, NY 10007 | Kansas City, MO 64112 |
| | |
| Cari Campen Laufenberg | James Pizzirusso |
| Keller Rohrback LLP | Hausfeld LLP |
| 1201 Third Avenue, Suite 3200 | 888 16th Street NW, Suite 300 |
| Seattle, WA 98101 | Washington, DC 20006 |

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

_____
Grace Amaya                    Dated: 04/17/2025

Grace Amaya
6924 N Lincolnshire Cir
Milwaukee, WI 53223



---

**T-Mobile Data Breach Settlement (EXHIBIT 1)**

---

**From** Grace Amaya <Gha08@live.com>

**Date** Mon 1/23/2023 10:54 PM

**To** info@t-mobilesettlement.com <info@t-mobilesettlement.com>

📎 2 attachments (859 KB)
Grace Statement - 2022.png; Grace Statement 2021.png;

CASE No. : 4:21-md-03019 (BCW)
MEMBER ID: 58500O2XJG0Z1

Attached is Exhibit 1

The date to submit a claim form was today 01/23/2023. I was unable to submit mine online. I spent several hours trying to submit it and decided to send this email due to fearing I would not make deadline. I have significant losses and due to the amount of pages, that may have been the issue. For proof on #2 please let me know what all you need. I will forward some emails that were sent to me to prove hacker was reaching out to my contacts requesting money and blackmailing me. I will send separate emails for each exhibit because I will not be able to send all the attachments in this email.

Reimbursement for Money you Spent (Out of Pocket Losses) or Lost Time:

1. Money you Spent - $900
   (Exhibit 1)
2. Lost Time – Recovery/Prevention, Work, Loss - $25,000 (It was much more than the minimum, as it was an ongoing issue & concern)
   (Exhibit 2A, 2B, 2C)
3. 2 Years of Identity Defense Services - $900
   (Exhibit 3)
4. Professionals $2,750
   (Exhibit 4)
5. Mileage -  $485
   4.5 hours round trip, gas and hourly rate.
6. Work Hourly Rate $90
   I came up with this by using my minimum charge of $90 hourly for consulting work I do. I am self employed and charge between $90 to $350 depending on what services I am contracted for.

The amount to show all the hours of misuse of my personal information, was difficult to print off and show. It was through emails. The hacker threatened me and I will forward the emails that he did not delete.

Regards,



EXHIBIT

 Outlook

## Fw: T-Mobile Settlement – Claim Filing

**From** Tomas Amaya <tmsamaya@yahoo.com>

**Date** Thu 1/26/2023 11:53 AM

**To** Grace Amaya <G.Amaya@outlook.com>

----- Forwarded Message -----
**From:** Kroll Settlement Administration <claimssupport@t-mobilesettlement.mailrt.com>
**To:** "tmsamaya@yahoo.com" <tmsamaya@yahoo.com>
**Sent:** Tuesday, January 24, 2023 at 03:59:39 PM CST
**Subject:** T-Mobile Settlement – Claim Filing

Thank you for your email.

Please note that the claims deadline was Monday, January 23, 2023.

It is our understanding that you may have had issues submitting a claim. If so, you can file a claim online at www.T-Mobilesettlement.com with the below Unique Class Member ID by **next Monday, January 30, 2023,** at 11:59 pm Hawaii Standard Time, and your claim will be treated as timely.

**Unique Class Member ID: 585013GG9XT4W**

If you had issues submitting a claim, **please file your claim using the Unique Class Member ID above.** We cannot guarantee that your claim will be treated as timely if you use a different Unique Class Member ID to file a claim after the deadline.

If you were able to successfully submit your claim and received an email confirmation with a claim number, you do not need to take further action, and we will be in touch regarding your inquiry.

Please note that you are a Settlement Class Member if you are among the approximately 76 million U.S. residents identified by T-Mobile whose information was compromised in the T-Mobile Data Breach. Identified Class Members were notified of the proposed settlement, so if you received a notice, you are likely a member of the Settlement Class.

If you have any additional questions, please email info@t-mobilesettlement.com.

Click here to unsubscribe to future emails related to this settlement

Click here to stop future mailings.



 **Outlook**

---

## FW: T-Mobile Settlement - Claim Filing

---

**From** Grace Amaya <Gha08@live.com>

**Date** Mon 1/30/2023 3:11 PM

**To** claimsupport@t-mobilesettlement.mailrt.com <claimsupport@t-mobilesettlement.mailrt.com>

**Bcc** info@t-mobilesettlement.com <info@t-mobilesettlement.com>

To whom it may concern;

I was able to successfully file a claim online late last night or early this morning I believe. I attempted to file it several times on the weekend prior to Jan. 23, 2023 but it would not allow me to submit it. I sent several emails to: info@t-mobilesettlement.com that I was having problems but never received anything. My son and others also had same problem and received an email stating that they should use their same unique class member ID and submit claim online before January 30, 2023 before midnight Hawaii Standard time zone. I never received any email or acknowledgment telling me to do the same but my son forwarded his below so I filed it. I just wanted to make sure it would be treated as timely because I did attempt to do it on time but as stated was unsuccessful. In addition, I sent a paper form that was not fully completed by USPS on January 24, 2023 because I did not know what to do.

I know you have many people to deal with so I can understand why you may have missed my emails, so I am sending another. My details are as follows:

### Unique Class Member ID: 585000O2XJG0Z1

Please advise and confirm that I will be put on the list to be treated as timely, like the others who had the same issue as I did with the online claim form on the weekend preceding January 23, 2023.

Thank you.

Grace


Sent from Mail for Windows

**From:** Tomas Amaya
**Sent:** Thursday, January 26, 2023 11:53 AM
**To:** Grace Amaya
**Subject:** Fw: T-Mobile Settlement - Claim Filing


----- Forwarded Message -----
**From:** Kroll Settlement Administration <claimssupport@t-mobilesettlement.mailrt.com>
**To:** "tmsamaya@yahoo.com" <tmsamaya@yahoo.com>
**Sent:** Tuesday, January 24, 2023 at 03:59:39 PM CST
**Subject:** T-Mobile Settlement - Claim Filing

Thank you for your email.



EXHIBIT 3

 **Outlook**

## T-Mobile Data Breach Settlement (EXHIBIT 1)

**From** Grace Amaya <Gha08@live.com>

**Date** Mon 1/23/2023 10:54 PM

**To** info@t-mobilesettlement.com <info@t-mobilesettlement.com>

📎 2 attachments (859 KB)
Grace Statement – 2022.png; Grace Statement 2021.png;

CASE No. : 4:21-md-03019 (BCW)
MEMBER ID: 5850002XJG0Z1

Attached is Exhibit 1

The date to submit a claim form was today 01/23/2023. I was unable to submit mine online. I spent several hours trying to submit it and decided to send this email due to fearing I would not make deadline. I have significant losses and due to the amount of pages, that may have been the issue. For proof on #2 please let me know what all you need. I will forward some emails that were sent to me to prove hacker was reaching out to my contacts requesting money and blackmailing me. I will send separate emails for each exhibit because I will not be able to send all the attachments in this email.

Reimbursement for Money you Spent (Out of Pocket Losses) or Lost Time:

1. **Money you Spent - $900**
   (Exhibit 1)
2. **Lost Time – Recovery/Prevention, Work, Loss - $25,000** (It was much more than the minimum, as it was an ongoing issue & concern)
   (Exhibit 2A, 2B, 2C)
3. **2 Years of Identity Defense Services - $900**
   (Exhibit 3)
4. **Professionals $2,750**
   (Exhibit 4)
5. **Mileage - $485**
   4.5 hours round trip, gas and hourly rate.
6. **Work Hourly Rate $90**
   I came up with this by using my minimum charge of $90 hourly for consulting work I do. I am self employed and charge between $90 to $350 depending on what services I am contracted for.

The amount to show all the hours of misuse of my personal information, was difficult to print off and show. It was through emails. The hacker threatened me and I will forward the emails that he did not delete.

Regards,



Grace Amaya
(414)416-0879

EXHIBIT **3**



 Outlook

## Fw: T-Mobile Data Breach Settlement c/o Kroll Settlement Administration LLC

**From** G. Amaya <Gha08@live.com>
**Date** Thu 3/20/2025 12:11 AM
**To** info@t-mobilesettlement.com <info@t-mobilesettlement.com>

To whom it may concern;

I still have not received confirmation of my on time claim. Please advise. I have emailed several times. See below. My children received theirs and they are all under my T-mobil account but I still have yet to receive any confirmation. This is one email I sent and I will be sending another email to show other emails I sent. I sent a total of nine emails, eight with proof of losses on 1/23/2023 and a final one on 1/30/2023. Please advise immediately.

Sincerely,

Grace Amaya
414-416-0879

---

**From:** Grace Amaya <Gha08@live.com>
**Sent:** Monday, January 23, 2023 10:49 PM
**To:** info@t-mobilesettlement.com <info@t-mobilesettlement.com>
**Subject:** T-Mobile Data Breach Settlement c/o Kroll Settlement Administration LLC

CASE No. : 4:21-md-03019 (BCW)
MEMBER ID: 58500O2XJG0Z1

The date to submit a claim form was today 01/23/2023. I was unable to submit mine online. I spent several hours trying to submit it and decided to send this email due to fearing I would not make deadline. I have significant losses and due to the amount of pages, that may have been the issue. For proof on #2 please let me know what all you need. I will forward some emails that were sent to me to prove hacker was reaching out to my contacts requesting money and blackmailing me. I will send separate emails for each exhibit because I will not be able to send all the attachments in this email.

Reimbursement for Money you Spent (Out of Pocket Losses) or Lost Time:

1. Money you Spent - $900
   (Exhibit 1)
2. Lost Time – Recovery/Prevention, Work, Loss - $25,000 (It was much more than the minimum, as it was an ongoing issue & concern)
   (Exhibit 2A, 2B, 2C)
3. 2 Years of Identity Defense Services - $900
   (Exhibit 3)
4. Professionals $2,750
   (Exhibit 4)
5. Mileage - $485

4.5 hours x 9 months @ $30.00 hourly rate



Grace Amaya
6924 N Lincolnshire Cir
Milwaukee, WI 53223

March 20. 2025

VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Scott Fenwick & Jeanne C. Finegan, Settlement Administrators
Kroll Settlement Administration
One World Trade Center
285 Fulton Street, 31st Floor
New York NY 10007

Norman Siegel, MO & Bradley Wilders
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112

Cari Campen Laufenberg (pro hac vice)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

James Pizzirusso (pro hac vice)
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006

**NOTICE: Urgent Request for Immediate Assistance – T-Mobile Data Breach Settlement Claim submitted timely but not acknowledged by Kroll Settlement**

To Whom It May Concern:

I am writing to formally request urgent assistance regarding my settlement claim in the T-Mobile Data Breach Class Action Settlement (Case No. [MDL No. 3019 & Master Case No. 4:21-md-03019-BCW]). Despite filing my claim timely and submitting multiple follow-ups via email, certified email and phone, I have not received any acknowledgment, while my children—who are on the same T-Mobile account under my account—have received confirmation of their claims.

Background of My Claim:

1.  I am a class member eligible to receive compensation under the T-Mobile Data Breach Class Action Settlement.
2.  I timely attempted to submit a settlement claim on or before January 23, 2023, via the official settlement website but encountered technical malfunctions that prevented successful submission.

3. I, along with two members of my household (my two sons), all encountered the same website submission issues and immediately emailed info@t-mobilesettlement.com on the same day to report the issue and request further guidance. (EXHIBIT 1)

4. The next day, my two sons each received a response from the Settlement Administrator stating:

"Thank you for your email. It is our understanding that you may have had issues submitting a claim. If so, you can file a claim online at www.T-Mobilesettlement.com with the below Unique Class Member ID by next Monday, January 30, 2023, at 11:59 pm Hawaii Standard Time, and your claim will be treated as timely." Each son received a **Unique Class Member ID** allowing them to **re-file their claims** after the original deadline." (EXHIBIT 2)

5. However, I never received a response at all from the Settlement Administrator and was not provided a Unique Class Member ID, effectively barring me from re-submitting a timely claim despite encountering the same issue as Plaintiff's sons.

6. Despite multiple attempts to contact the Settlement Administrator via email and phone, I have not received any acknowledgment of my claim, while other members on the same T-Mobile account, two of my children, have received confirmation.

7. I estimate my claim to be valued at over $20,000, based on hourly & out-of-pocket losses directly resulting from the data breach. (EXHIBIT 3 & EXHIBIT 4)

## II. FACTUAL BACKGROUND

8. I attempted to file my claim through the T-Mobile settlement website, which malfunctioned during submission, creating uncertainty regarding claim receipt.

9. Both my sons and I, all emailed the Settlement Administrator on the same day to report the technical failure.

10. My two sons received a next-day response from the Settlement Administrator allowing them to re-submit their claims with a Unique Class Member ID extension until January 30, 2023.

11. I, however, never received a response from the Settlement Administrator, leaving me without a way to re-submit the claim or obtain confirmation.

12. The Settlement Administrator has failed to act in good faith by refusing to acknowledge or investigate my claim, while granting claim extensions to other similarly situated claimants within my household.

13. The disparate treatment of class members within the same household raises serious concerns about the fairness and integrity of the claims processing procedure.

## III. LEGAL BASIS FOR RELIEF

10. I have a legal right to receive settlement compensation under the terms of the T-Mobile Data Breach Class Action Settlement Agreement.

11. The Settlement Administrator's failure to acknowledge my validly submitted claim constitutes a violation of due process and a breach of the settlement agreement.

12. *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)* requires that settlement class members be provided notice and an opportunity to participate, which has been denied in my case.

13. In *re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124 (2d Cir. 2001)* establishes that settlement administrators must act in good faith, and their failure to do so can be challenged in court.

14. *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)* allows courts to intervene when there is evidence of mismanagement or fraud in settlement administration.

**Urgent Request for Assistance:**

EXHIBIT 4

I respectfully request that:

1. Class counsel intervene & assist with Kroll Settlement. _Class counsel has an obligation to ensure fair settlement distribution (Visa Check, 2001)._
2. The settlement administrator immediately confirm my claim and provide the status of its processing.
3. If my claim was misplaced, the administrator reinstate my claim and ensure I receive the settlement payment I am entitled to.
4. A response be provided within five (5) days from receipt of this letter.
5. Explanation from Kroll why my claim was ignored.

Legal Concerns:

Failure to acknowledge my valid claim may constitute a due process violation under _Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)_, as I have been denied a meaningful opportunity to participate in the settlement. Furthermore, the failure to process my claim while my children's claims were confirmed raises concerns of arbitrary settlement administration, which courts have previously ruled against (_In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124 (2d Cir. 2001)_). If I do not receive a response, I may be forced to escalate my concerns to regulatory agencies and pursue further legal remedies.

Next Steps:

If I do not receive a response within ten (10) days, I will consider:

- Filing formal complaints with the Federal Trade Commission (FTC) and my State Attorney General regarding Kroll's mishandling of settlement claims.
- Engaging legal counsel to formally challenge the settlement administration process.
- Contacting media outlets that have covered the settlement to raise awareness about potential claim mismanagement.

I expect a prompt resolution of this matter. Please provide a written response confirming my claim status and next steps to my email at _____ or by mail to the address below.

Sincerely,

Grace Amaya

6924 N Lincolnshire Cir
Milwaukee, WI 53223
(414)416-0879
Gha08@live.com

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Kansas City, MO 64112

Certified Mail Fee $4.85

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $2.04

Total Postage and Fees $10.77

Postmark Here
MAR 20 2025
03/20/2025

Sent To ATTN: Norman Siegel & Bradley Wilders
SIEVE STEGEL HANSON, LLP
Street and Apt. No., or PO Box No. 460 Nichols Road, Ste. 200
City, State, ZIP+4® Kansas City, MO 64112

PS Form 3800, January 2023 PSN 7530-02-000-9047  See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

New York, NY 10007

Certified Mail Fee $4.85

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $2.04

Total Postage and Fees $10.99

Postmark Here
MAR 20 2025
03/20/2025

Sent To ATTN: Scott Fenwick & Jeanne C. Finegan
EPIQ SETTLEMENT ADMINISTRATION
Street and Apt. No., or PO Box No. One World Trade Center, 285 Fulton St., 31st Floor
City, State, ZIP+4® New York, NY 10007

PS Form 3800, January 2023 PSN 7530-02-000-9047  See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Seattle, WA 98101

Certified Mail Fee $4.85

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $2.04

Total Postage and Fees $10.98

Postmark Here
MAR 20 2025
03/20/2025

Sent To ATTN: Cari Campen Laufenberg
KELLER ROHRBACK LLP
Street and Apt. No., or PO Box No. 1201 Third Ave., Ste. 3200
City, State, ZIP+4® Seattle, WA 98101

PS Form 3800, January 2023 PSN 7530-02-000-9047  See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Washington, DC 20006

Certified Mail Fee $4.85

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $2.04

Total Postage and Fees $10.99

Postmark Here
MAR 20 2025
03/20/2025

Sent To ATTN: James Pizzirusso
HAUSFELD, LLP
Street and Apt. No., or PO Box No. 888 16th St. NW, Ste. 300
City, State, ZIP+4® Washington, DC 20006

PS Form 3800, January 2023 PSN 7530-02-000-9047  See Reverse for Instructions

**EXHIBIT 5**

# AFFIDAVIT OF HOURLY FINANCIAL LOSSES DUE TO DATA BREACH

I, __Grace Amaya__, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge:

## I. BACKGROUND

1. I am a Settlement Class Member in the T-Mobile Data Breach Class Action Settlement.
2. As a direct result of the data breach, a hacker gained unauthorized access to my email account, using it to send fraudulent messages to my professional and personal contacts, requesting money and gift cards.
3. The hacker also attempted blackmail, falsely claiming to have exposed images of me and threatening to release them unless I complied with demands.
4. As I worked to recover control of my account, the hacker was simultaneously deleting sent emails, preventing me from retrieving full evidence of the fraudulent messages.
5. I was able to save some emails by moving them into a separate folder before they were all deleted.
6. My business contacts, clients, family, and friends received these fraudulent emails, resulting in damage to my professional reputation and credibility.
7. I received multiple calls and text messages from concerned contacts asking if I was in distress or in financial trouble.

## II. TIME SPENT MITIGATING DAMAGES

8. I am a Marketing Consultant, and my professional hourly rates at that ranged from $90 to $350 per hour, depending on the scope of work and level of service provided.
9. Due to this data breach, I was forced to divert my time from consulting projects to address and mitigate the damage caused by the hacker.
10. I spent a minimum of 85 hours:
    o Securing and regaining access to my accounts by enabling two-factor authentication and restoring security settings.
    o Notifying professional and personal contacts that the fraudulent messages were not from me.
    o Hiring a cybersecurity professional to prevent further damage and reinforce my digital security.
    o Monitoring financial accounts and credit reports for potential fraudulent transactions.
    o Rebuilding trust with clients and business associates, who were directly impacted by the fraudulent emails.

## III. JUSTIFICATION FOR HOURLY RATE CLAIM ($350 PER HOUR)

11. My professional hourly rate of $350 is justified based on:
    o **Industry Standards:** My rate aligns with senior-level marketing consultants providing branding, reputation management, and business strategy services.
    o **Past Client Agreements:** I have regularly charged $350 per hour for high-level strategic consulting work.
    o **Opportunity Cost:** The 85+ hours spent mitigating damages resulted in direct financial loss from lost billable consulting hours.
    o **Legal Precedent Supporting Professional Compensation:**
        ▪ *Perdue v. Kenny A., 559 U.S. 542 (2010)* – Courts recognize that fees and hourly rates must reflect the prevailing market rate for similarly skilled professionals.
        ▪ *Missouri v. Jenkins, 491 U.S. 274 (1989)* – Non-traditional billable work, such as mitigation and security efforts following unauthorized interference, must be compensated at the professional's usual rate.
        ▪ *Blum v. Stenson, 465 U.S. 886 (1984)* – Courts hold that reasonable professional fees must reflect the individual's skill and expertise within their industry.

## IV. TOTAL HOURLY RATE SETTLEMENT REQUESTED

15. Under the terms of the settlement, the maximum allowable reimbursement for documented hourly financial losses is $25,000.
16. Given that my total calculated financial loss exceeds this cap, I am requesting the full $25,000 reimbursement, as follows:
    o 85 hours of lost work time at my consulting rate of $350 per hour – Total: $29,750
    o Total Requested Reimbursement (capped per settlement terms) – $25,000

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Sincerely,

_[signature]_

Grace Amaya                    03/18/2025

EXHIBIT 6

# Pricing Proposal



**Prepared for:** ~~█████████████████████~~, ~~████████████████████~~
**Prepared by:** Grace Amaya

## About My Work

I bring extensive experience in the medical aesthetics industry, having delivered excellent results for clients nationwide. My commitment to excellence sets me apart—I believe in exceeding expectations, not just meeting them. Coming from a background where exceptional performance was mandatory, I've developed a comprehensive system specifically for the healthcare/medical industry that consistently delivers powerful results.

Through years of dedication, creativity, and strategic implementation, I've created proven strategies that have successfully positioned numerous medical aesthetic practices as industry leaders. These methods have been tested and refined across various markets nationwide, ensuring reliable success for each client.

I look forward to partnering with VIVE Medical Aesthetics, implementing these proven strategies to establish your practice as the premier leader in your community.

### *Our Shared Vision:*

*Create an engaging digital community where* ~~██████████ ████████~~ *inspires and empowers, naturally driving interest in our premium services and establishing* ~~█████████~~ *as the destination for aesthetic wellness.*

## Packages

- ### *SOCIAL BOOST PACKAGE (Level 1)*

1. Professional content creation and scheduled posting for two platforms, 3 times per week

EXHIBIT

- Strategic mix of static posts, videos, and Reels
- Monthly on-site consultation for video, photo, and strategy planning (2-hour maximum)
- Comprehensive performance tracking
- Proven sales campaign #1 with 80% success rate
- Proven to increase customer interest, incoming calls, and traffic
- Complete campaign design and layout included
- Full explanation of proper implementation steps provided

## *INCOME GENERATOR PACKAGE (Level 2)*

- Everything in Social Boost Package Plus:
- Analytics and performance tracking
- Implementation of proven Sales Campaign #2, which has consistently generated 35% to 50% increases in monthly revenue
- Strategic focus on high-ticket sales and customer loyalty development
- Implementation of campaign that has transformed struggling businesses into market leaders
- Comprehensive setup and strategic marketing plan, implemented in proven stages to ensure stable, continuous growth
- Website design, setup, and updates aligned with sales campaigns (available as direct service or in collaboration with your developer)

## *COMPLETE MARKET DOMINATION PACKAGE (Level 3)*

- Everything in Income Generator Package Plus:
- All Proven Sales Campaigns Used to Grow a Strong Community Presence
- Strategic Network Expansion: Comprehensive area surveys to identify unique niche opportunities, additional revenue streams and enhanced sales campaigns
- Collaborative Growth Initiatives: Location-specific analysis for compelling stories and PR opportunities
- ·Implementation of effective automation systems that drive customer satisfaction and consistent referrals, delivering results that surpass typical referral programs

# Pricing

EXHIBIT 7

| Service | Terms | Number | Total Price |
| --- | --- | --- | --- |
| **Level 1** | Monthly | 12 | $2,250 |
| **Level 1** | Monthly | 6 | $2,500 |
| **Level 2** | Monthly | 12 | $4,250 |
| **Level 2** | Monthly | 6 | $4,500 |
| **Level 3** | Monthly | 12 | $6,250 |
| **Level 3** | Monthly | 6 | $6,500 |
| **Additional services** | | | |
| **Grand Total** | | | |

# Details

I've outlined our proven strategies with your new business in mind. Since you're open to negotiation, I've shared all packages - many requiring minimal advertising investment while delivering strong results. Let's discuss customizing the right combination of services that fits your budget and position VIVE Medical Aesthetics for growth.

# Contact Details

| Name | Phone | Email |
| --- | --- | --- |
| *Grace Amaya* | 414-905-3325 | g.amaya@outlook.com |

EXHIBIT 7

# Applied Branding & Marketing

Experiential & Digital
Marketing Services

# INVOICE

Invoice Number: #0679

**BILL TO:**

~~[redacted]~~
~~[redacted]~~

**Payment Method**
**Venmo Monthly**

| NO | ITEM DESRIPTION | PRICE | TERM | TOTAL |
|----|-----------------|-------|------|-------|
| 1 | Content creation<br>3x Wkly - FB, Instagram | $30,000 | 12 | $2500 |
| 2 | SMS/Automation Set Up<br>Increase visits and $ amt per visit | $ 500 | 1 | $ 500 |

| | |
|---|---|
| Total | $3000 |
| Tax | - |
| Discount | - |
| Sub Total | $3000 |

**Term and Conditions:**
*Please see agreement for full terms and
conditions. May have additional SMS monthly
costs detailed under AC section of agreement.*



**CHASE** ◻
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

March 01, 2025 through March 31, 2025
Account Number: ___ - ___ )7708

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |

GRACIELA H AMAYA DBA
APPLIED BRANDING & MARKETING
6924 N LINCOLNSHIRE CIR
MILWAUKEE WI 53223-6341

## Chase Business Complete Checking® and Chase Business Savings account customers: We're increasing the rush fee for replacement debit and ATM cards to $15.

Starting June 22, 2025, there will be a $15 fee if you request express shipping on a replacement Chase debit or ATM card. Please know that you can still receive a replacement card at no cost through our regular mailing process.

Access your replacement card sooner by adding it to your digital wallet.
- When you add your card to your digital wallet, you'll typically be able to use your replacement card once it's issued.
- For more information on how to add your card to your digital wallet, visit **chase.com/Digital-Payments**.

If you have any questions, please call the number on this statement. We're here to help.

## California privacy policy information for Chase business accounts

If you are a California resident, you may have rights under the California Consumer Privacy Act ("CCPA") if personal information was collected as part of your business account. Learn more by reviewing our CCPA Disclosure and Notice at Collection, available at **chase.com/privacy** or in the Chase Mobile®,¹ app in the Security & Privacy Center. Please note that the CCPA does not apply to personal information collected subject to certain other laws, including the Gramm-Leach-Bliley Act and the Fair Credit Reporting Act. For example, the CCPA does not apply to personal information we collect when you obtain products or services primarily for personal, family or household use. If you have any questions, call the number on this statement.

# EXHIBIT 9

# BUS COMPLETE CHK (...7708)

You can view up to 7 years of bank statements.

We'll usually post your online statement 3–5 business days after your statement cycle ends.

If you don't see an account, statement or document, it may be hidden; you can update those in "show or hide accounts."

| Paperless |
| --- |

▶ 2025

▶ 2024

▶ 2023

▶ 2022

▶ 2021

▶ 2020

▶ 2019

▶ 2018

**EXHIBIT** 10

April 5, 2025

**RE:** T-Mobile Settlement Claim – Final Submission, Legal Basis for Full $25K Compensation

Dear Max & Class Counsel;

Thank you for your follow up regarding my T-Mobile Data Breach Settlement claim. I am writing to submit supporting documentation and clarify a few important points to ensure my full claim is properly evaluated and approved.

**Supporting Documentation for Professional Hourly Rate**

I've attached two documents that directly support my professional rate of $350/hour:

- Sworn Affidavit (previously mailed via certified letter)
- Professional Invoice for client work at $350/hour
- Strategic Proposal outlining service tiers and rates
- Business Bank Statement under DBA "ABM" & Statement years

Although I operate my consulting practice through my DBA "ABM," I approach clients under my personal name to offer personalized, high-touch service. These documents reflect my standard rate and history of professional work over nearly a decade. Statements online only go back 7 years, it would take time to request the original opening date which was in 2016.

**Clarifications & Procedural Failures**

1. Correction: 15 Hours vs. 85 Hours

The original submission listed only 15 hours, made under duress due to technical issues, panic, and lack of communication. That number was clearly an error — the full claim is for 85 hours, now documented with attached materials. This 85-hour figure represents a conservative estimate of actual time spent, as documented in my sworn affidavit, and reflects the extensive security remediation efforts spanning several months

- *Perdue v. Kenny A., 559 U.S. 542 (2010)* – Reasonable hourly rates for professionals must reflect skill and market conditions.
- *Haines v. Kerner, 404 U.S. 519 (1972)* – Pro se filings must be interpreted liberally and not denied on technical grounds.

Additional Context – Original 2023 Email

- In my January 30, 2023 email to info@t-mobilesettlement.com, the first line mistakenly stated that I was "able to submit my claim online." The rest of the message clearly contradicts that, explaining my inability to do so, repeated failed attempts, and submission of a partially completed paper claim by mail out of desperation. This confirms that I was stressed and panicked. I made careless errors in both this initial email and hours detailed. The fact that my accounts were compromised demonstrates that 85 hours minimum would be more accurate given the extensive time required to:

1. Locate all the emails hacker sent out while I was reviewing them & hacker simultaneously deleting them live while we were both in my account.
2. Change credentials across all affected platforms & attempting to set up 2 step authentication while hacker was still in my account
3. Implement additional security measures
4. Monitor accounts for further suspicious activity
5. Correspond with relevant institutions and authorities



EXHIBIT

6. Research legal options and remedies
7. Traveling and meeting with professionals for assistance
8. Reach out to family, friends and clients
9. Provide warnings and explanations for my contact list to protect themselves

## 2. Deficiency Letter Never Received

I was told a deficiency letter was emailed to an alternate address, but I never received it. No one has provided a timestamp, confirmation, or verified delivery.

- *Mullane v. Central Hanover Bank, 339 U.S. 306 (1950)* – Due process requires actual notice, not silent assumptions.

## 3. Proof of Business Legitimacy and Rate

Each supporting document independently verifies my professional status and rate, creating a consistent and verifiable record of my business activities and standard billing practices. My documentation shows years of consistent consulting practice, including:

- $350/hour rate reflected in my invoice and proposal
- Long-standing DBA with attached bank evidence for over 7 years. Online bank records are limited to the past 7 years; older records require an in-person bank request that I did not have time to retrieve due to lack of notice.
- A sworn affidavit explaining my actual time and work
- *Missouri v. Jenkins, 491 U.S. 274 (1989)* – Non-traditional professional work must be compensated based on value, not limited to traditional hourly tracking.
- *Chambers v. NASCO, Inc., 501 U.S. 32 (1991)* – Courts may act to correct abuse of process or unfair administration.

## 4. Disparate Treatment Compared to My Sons

My sons, under the same T-Mobile account, were given Class Member IDs and received responses, re-submission instructions and confirmation of payment. I, the primary account holder, received no such support. This is not a procedural slip — it is a due process violation and grounds for concern regarding fairness in administration.

- *In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124 (2d Cir. 2001)* – Settlement administrators must act in good faith and apply rules uniformly.
- *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)* – Courts may intervene when procedural unfairness undermines settlement integrity.

## 5. Discriminatory Rejection of Self-Employment Evidence

During our recorded phone call on April 5, 2025, Max stated:

"The affidavit attesting to your wage — unfortunately, they don't consider that sufficient documentation. So if there's any other documentation you have of your wage that you can provide… We are on the eve right now of the funds being distributed, so it might be the case that they may not be able to adjust it — but if it is still possible, we are more than happy to try to facilitate that."

    A. This statement suggests that *affidavits from self-employed individuals are categorically rejected*, regardless of supporting documentation. That position is inconsistent with federal evidentiary standards and class action fairness principles.

    B. It contradicts federal standards and unfairly excludes self-employed individuals from full participation in the settlement. I am a legitimate business owner, and I have provided:

- A sworn affidavit *28 U.S.C. § 1746)*

EXHIBIT U

- A paid invoice and pricing proposal
- A bank statement under my DBA
- A 10-year business history

    C. A sworn affidavit submitted under _28 U.S.C. § 1746_ is a valid form of federal evidence. If only pay stubs are accepted, that would unlawfully discriminate against self-employed class members, depriving them of equal participation in the settlement.

    D. Case law such as _Chao v. Gotham Registry, Inc., 514 F.3d 280 (2d Cir. 2008)_ and _Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28 (1961)_ makes clear that courts routinely accept affidavits and alternative wage proof for independent contractors and gig workers

    E. To deny self-employed class members solely on the basis that they do not receive pay stubs would be _procedurally unjust and discriminatory._

## 6. Misstatement Regarding the $25,000 Cap and Eligibility for Documented Lost Time

During our recent recorded phone call, Max stated:

"the $25,000 settlement cap is applied only to out-of-pocket losses, and that a maximum of 15 hours could be claimed for lost time."

    A. This is incorrect and contradicts both the published settlement terms and common class action practice.

    B. The _T-Mobile Data Breach Settlement FAQ_ explicitly states that up to 15 hours of lost time is compensable without documentation, and that additional hours and/or a higher hourly rate may be claimed if properly documented.

    C. I have provided:
- A sworn affidavit
- A detailed invoice
- A pricing proposal
- Proof of client relationships and long-standing professional billing

    D. This fully substantiates both my hourly rate ($350/hour) and my actual time loss (85+ hours). The $25,000 cap applies to total compensation, which may include any combination of lost time and out-of-pocket losses, provided that proper documentation is submitted.

**Relevant Authority:**

- T-Mobile Settlement FAQ (archived): Allows higher lost time claims with documentation, not limited to 15 hours.
- _Missouri v. Jenkins, 491 U.S. 274 (1989)_ – Non-traditional, professional work time related to a legal matter is compensable at full value.
- _Perdue v. Kenny A., 559 U.S. 542 (2010)_ – Professionals must be compensated at prevailing market rates when properly documented.
- _Chao v. Gotham Registry, Inc., 514 F.3d 280 (2d Cir. 2008)_ – Self-reported hours and alternate documentation are sufficient for wage-based claims.

This further supports my request that the full $25,000 be approved based on the combined impact of actual lost income and necessary expenditures to mitigate the breach.

**Further Relevant case law:**

- _Chao v. Gotham Registry, Inc., 514 F.3d 280 (2d Cir. 2008)_ – Affidavits and self-reported hours are valid for wage claims.

# EXHIBIT 11

- _Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28 (1961)_ – Self-employed workers are entitled to equal labor protections.
- _Carter v. Dutchess Cmty. Coll., 735 F.2d 8 (2d Cir. 1984)_ – Excluding self-employed individuals from wage protections is unlawful.

I respectfully urge you to _accept my sworn affidavit and business documentation_ as sufficient to meet the standard required for professional hourly compensation. To do otherwise would elevate form over substance and deny equal treatment under this court-approved settlement.

**Final Argument – Fairness, Integrity, and Injury**

The procedural irregularities, paired with my now-complete documentation, substantiate my claim for full compensation at the $25,000 settlement cap. Anything less would not be a mere technicality—it would constitute a significant, ongoing injury, both procedural and financial.

- I have corrected every alleged deficiency, substantiated my rate with industry-accepted evidence, and acted in good faith under extreme deadline pressure with minimal support.
- I made every effort to comply, contacting Kroll multiple times via email, certified mail, and phone at my own expense, despite inadequate notice and follow-up until I involved class counsel. My documentation is complete, all discrepancies are resolved, and the facts are clear.
- Denying me full compensation—while others similarly situated were provided a much easier path—would be legally and ethically unjust.
- I respectfully urge that this record be closed and payment of the full $25,000 authorized without further delay.
- I also reserve all legal rights regarding the handling of this claim, including due process violations, notice failures, and discrimination against self-employed individuals.

If this submission contains minor technical or formatting errors, please interpret it favorably based on my good faith efforts, the facts, and legal standards. I was contacted today with yet another tight deadline, adding stress that may have caused minor oversights, especially as others are already receiving payment. Please confirm receipt of this email and provide a status update on payment.

Sincerely,

Grace Amaya
6924 N Lincolnshire Cir
Milwaukee, WI 53223
(414)416-0879

**Attachments:**
- Sworn Affidavit.pdf
- VIVE MA Invoice Pd.pdf
- VIVE MA Pricing Proposal.pdf
- ABM Bank Statement (Partial Acct Numbers Redacted).pdf
- ABM Bank Statement – List of Years Provided.pdf

EXHIBIT 11

 Outlook

## Final Request – T-Mobil Data Breach Settlement Claim (Grace Amaya) – Certified Letter En Route

**From** G. Amaya <Gha08@live.com>
**Date** Fri 4/4/2025 7:02 AM
**To** info@t-mobilesettlement.com <info@t-mobilesettlement.com>
**Bcc** G. Amaya <Gha08@live.com>

Dear Scott Fenwick & Jeanne C. Finegan, Settlement Administrator/s; (Claim #: 58500O2XJG0Z1)

I am writing to inform you that I have sent a **certified letter** dated **April 3, 2025** to your offices regarding the mishandling of my claim under the **T-Mobile Data Breach Settlement (Master Case No. 4:21-md-03019, MDL No. 3019).**

Out of courtesy, and to allow time for early review, I have pasted the **full contents of that letter below.** For your convenience, I have also provided a **read-only PDF version** via secure Microsoft link below:

https://1drv.ms/b/c/770be41973d9c377/EeffzyhDYyJEnlhoN66dxMUB_9-rQPohkRqrcgST6SPl5Q?
e=C443yf
*(No login required to view or download.)*

Please note that if I do not receive a response, I will proceed with the legal steps outlined in the letter, including filing a motion with the court and submitting formal complaints to appropriate regulatory agencies.

If you require further documentation, I will promptly provide it upon request.

Thank you for your time and attention to this matter.

Sincerely,

**Grace Amaya**
Claim #: 58500O2XJG0Z1
(414)416-0879
gha08@live.com

---

**April 3, 2025**

**VIA CERTIFIED MAIL**

**FINAL REQUEST FOR RESOLUTION – NOTICE OF INTENT TO FILE COURT MOTION AND PURSUE CLAIMS FOR FIDUCIARY BREACH, FRAUD UPON THE COURT AND DENIAL OF DUE PROCESS**

EXHIBIT **11**

To:

**Scott Fenwick & Jeanne C. Finegan**
**Kroll Settlement Administration**
**One World Trade Center, 31st Floor**
**New York, NY 10007**

**Norman Siegel & Bradley Wilders**
**Stueve Siegel Hanson LLP**
**460 Nichols Road, Suite 200**
**Kansas City, MO 64112**

**Cari Campen Laufenberg**
**Keller Rohrback LLP**
**1201 Third Avenue, Suite 3200**
**Seattle, WA 98101**

**James Pizzirusso**
**Hausfeld LLP**
**888 16th Street NW, Suite 300**
**Washington, DC 20006**

**Re: Mishandled Claim Under T-Mobile Data Breach Settlement — Primary Account Holder Denied Participation While Secondary Lines Were Fully Processed**

**Master Case No. 4:21-md-03019 (MDL No. 3019)**

**To the Settlement Administrator and Class Counsel:**

This letter serves as final written notice prior to litigation regarding mishandling of my claim under the T-Mobile Data Breach Class Action Settlement. I am the primary account holder for a multi-line T-Mobile account that was impacted by the data breach. T-Mobile sent me a text and written notice containing a unique claim number, which I used to attempt to submit my claim on or before January 23, 2023. Your system confirms that my claim was received on either January 13 and February 7, 2023. Despite this, I have never received a confirmation, deficiency notice, or any response. My two sons, who are secondary users under my account, did not receive direct notice from T-Mobile. I shared my notice with them so they could file their own claims — which they did successfully using their own newly assigned claim IDs. They were acknowledged, allowed to submit claims online and informed that payments are being released starting April 1, 2025I. In contrast, I — the only person directly contacted by T-Mobile — was never given the opportunity to participate.

**New Developments – April 2, 2025**
After more than a year of silence, I was finally able to reach multiple Kroll representatives by phone. The first two agents:

- Confirmed that they received my claims on both January 13 and February 7, 2023. I never sent anything on January 13, 2023.
- On first call, confirmed that a deficiency letter was allegedly sent in August 2023 but could not provide a date or method and BCI was disconnected when requesting specifics.

EXHIBIT 11

- On second call, gave conflicting dates and could not specify whether the letter was sent by mail, email or other method. Disconnected mid-call while I was asking for clarification
- Were unable to provide proof or a copy of the letter

A third call, agent confirmed my claim was under review and said someone would "reach out in the next day or two" to determine whether my claim can be reinstated or confirmed. I have audio recordings of these calls, and per your phone line notice, so do you. Your agents' inability to explain your own records, delivery methods, or decisions confirms systemic failure. If a claim is deemed deficient, the administrator must prove it provided actual notice and a real opportunity to cure. You failed to do so.

On March 20, 2025, I mailed certified letters with full documentation to fulfill my claim to Kroll and class counsel. To date, I have received no response from any party. Yet the public settlement site confirms that payments are being disbursed as of April 1, 2025, with no resolution of my claim status. As the primary account holder, contacted directly by T-Mobile, I have been arbitrarily excluded while secondary users under my own account were allowed full participation.

**Legal & Fiduciary Consequences of Continued Inaction**
**Unless resolved by April 8, 2025, I will:**
1. File a Motion to Compel and Notice of Fraud Upon the Court in the U.S. District Court for the Western District of Missouri citing:
   - *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238
   - *Chambers v. NASCO, Inc.*, 501 U.S. 32
   - *Mullane v. Central Hanover Bank*, 339 U.S. 306
   - *In re Visa Check/MasterMoney*, 280 F.3d 124
   - *Haines v. Kerner*, 404 U.S. 519
2. File regulatory complaints with the:
   - Federal Trade Commission
   - Wisconsin Attorney General
   - Other relevant authorities
3. Prepare to initiate civil proceedings against:
   - Kroll Settlement Administration
   - Class counsel (if found to have contributed to systemic exclusion or failed oversight)

**Final Deadline: April 8, 2025**
**I am demanding:**
- Written acknowledgment of my claim and current status in writing
- Copy and proof of any alleged deficiency letter (including date sent, method, and contents)
- Reinstatement or confirmation that my claim is being processed
- Explanation of why the only account holder contacted directly by T-Mobile with a claim # was excluded, while secondary lines were fully processed

This is your last opportunity to correct an avoidable legal failure. Failure to respond will result in legal filings and public accountability.

**Respectfully,**

EXHIBIT 11

**Grace Amaya**
**6924 N Lincolnshire Cir.**
**Milwaukee, WI 53223**
**(414)416-0879**
**Gha08@live.com**

EXHIBIT 11

 **Outlook**

---

**T-Mobile Data Breach Settlement: Claim Status**

**From** no-reply@mail.ksadministration.com <no-reply@mail.ksadministration.com>
**Date** Fri 4/11/2025 11:54 AM
**To** gha08@live.com <gha08@live.com>

---

*Please do not reply to this message via email. This address is unattended and cannot help with questions or requests.*

Upon reviewing your claim (58500O2XJG0Z1), we can confirm that you will receive compensation for 15 hours of lost time at a rate of $25 per hour, along with validated out-of-pocket expenses, which include $2,750 for Paid Professional services and $980 for Purchased Monitoring, totaling $3,730.

For additional information, please visit: www.t-mobilesettlement.com or call the toll-free number: 1-833-512-2314.

Thank you,
Settlement Administrator

